## Borough of Erie *against* Vincent.

If a vendor contracts to convey real estate to another, at a future day, for a certain price to be paid for it, and afterwards, and before the time of the conveyance, alters the state of the property, so as materially to lessen its value, the vendee may rescind the contract and refuse to accept the deed and to pay the purchase-money: or if he has paid a part, may recover back the money thus paid.

ERROR to the common pleas of *Erie* county.

The Burgess and Town Council of the Borough of Erie against John Vincent and Martin Strong. This was an action of debt to recover the price of a lot sold by the plaintiffs to the defendants. Plea payment, with leave, &c.

[Borough of Erie v. Vincent.]

It appeared in evidence that, by virtue of an act of assembly, the borough of Erie was authorised to lay out certain water lots in the basin, at the town of Erie. After the adoption of a plan by which the lots were laid out and numbered, they were exposed to public sale, and lot No. 89 was sold to the defendants for 4600 dollars. One-tenth part of the purchase-money was paid at the time of the sale. The defence was, that after the sale, the plaintiffs had made an alteration in the plan of the lots by which the value of that sold to the defendant was greatly lessened, and in consequence of which they had rescinded the contract, and claimed to recover back the money paid upon it. The alteration, and the injurious effect of it upon the lot sold to the defendants were fully proved. And under the direction of the court below, (Shippen, president,) the jury found a verdict for the defendant, and that four hundred and sixty dollars be refunded to them by the plaintiffs.

*Walker* and *Babbitt*, for plaintiffs in error, contended that no vested right of the defendants was changed by the alteration of the plan; that the injury to it was ideal and speculative; that under the plea of payment, the defendants were not entitled to recover back the money paid, and on this point cited 9 *Serg. & Rawle* 409, 422; 10 *Serg. & Rawle* 55.

*Galbraith, contra,* on the same point, cited 17 *Serg. & Rawle* 385; 2 *Penn. Rep.* 154.

The opinion of the Court was delivered by

SERGEANT, J.—I consider it a plain principle of law and justice, that if one person contracts to convey real estate to another, at a future time, for a certain price to be paid for it, and afterwards, and before the time of the conveyance, alters the state of the property, so as materially to lessen its value, the other party may rescind the contract and refuse to accept the deed and to pay the purchase-money, or if he has paid a part, may recover back the money thus paid. The maxim that no one can take advantage of his own act, directly applies. I do not speak of the case where the property turns out differently from what it appeared to be at the time of the contract, without the subsequent act or default of either party; there justice may, in some instances, be done by a deduction from the purchase-money for the failure of consideration. But that is very different from the case where the party, contracting to convey property, himself voluntarily diminishes its value in a material degree. He has then no equity to compel the other party to proceed with the bargain, and accept a thing different from that which he contracted for. It is of no importance in what the alteration consists, provided it is attended with serious and permanent loss to the party, whether it is a conveyance of a portion of the land, or a grant of an easement or servitude out of it, or a diminution of certain benefits

which it at first possessed.    It is sufficient that a material loss is to be incurred in consequence of the voluntary act of the vendor.

It appears in the case before us, that, by the resolutions and terms of sale, the plaintiffs, in June 1836, sold to the defendants, and to eleven other persons, respectively, according to a plan, certain adjoining water lots, running 340 feet into Lake Erie.    The defendants purchased No. 89, the most westwardly lot, except the next adjoining, (No. 90,) which was sold to Mr Reed.    The purchasers were to have the privilege of constructing a storehouse wharf, 250 feet out in the lake, 200 feet wide, with streets, to be supported by a pier to be built, and approaching within 400 feet of the canal basin pier, an outer pier which had been already erected by the canal state commissioners, in order to form a basin for the state canal, which was to terminate there.    This was not obligatory on the purchasers, but optional.    It could only be done by an arrangement among themselves; but it was required of them, if they preferred to erect it, to conform to the plan, subject to the general direction of the burgess and council.    By this plan, it formed one continuous wharf.

In January 1837, the corporation altered their minds as to the expediency of the plan, and procured an agreement from the purchasers at the different sales, (not signed by the defendants,) stating that the rights of extension before given might be injurious to the convenient use of the canal, and a permanent plan was required to obviate much inconvenience, promote uniformity and beauty, and combine private interest with public convenience, and these purchasers agree to give up the building of a storehouse wharf, on the basin, 250 feet out, and bind themselves to build a storehouse wharf adjoining the pier erected by the canal commissioners, 600 feet out, in consequence of which the trade from the canal, which, (when the canal should be completed,) would, by the original plan, have come among the first to the defendants' lot, will now seek the storehouse wharf on the basin.    Some other privileges were added. The defendants, if they were even to agree to this change, could not have the same advantages as the other purchasers, because the canal commissioners' pier does not extend so far as to front their lot, No. 89, but terminates with the line of the lot No. 88, next to them on the east, extended out to that point.

The defendants thus, in the first place, lose the benefits of their site by this change, and the other purchasers obtain commercial advantages which they cannot have.    Their lot, instead of being more valuable for commercial purposes than most of the other lots sold at the same time, and fetching a higher price, becomes far less valuable than it would have been under the former plan, as compared with the other lots.    But it is said that this is only a speculative value, which the defendants were to risk; that the intrinsic value is not diminished; that is to say, the lot is not shown to be worth less than it was, by reason of the change, but only less than it would have been as compared with others: that nothing was taken away

[Borough of Erie v. Vincent.]

from the defendants; they have their lot, as sold, with all the privileges belonging to it, and they may yet, if they please, build their storehouse wharf 250 feet out in the basin.

All value is comparative: and it seems to me that, if the defendants, by bidding a higher price than most others for the advantages of situation, were authorised to expect a priority, the vendor cannot, in justice, take away that priority at his will and pleasure, to suit his change of notions or schemes of policy. Suppose an owner of ground on a commercial site lays out lots by a plan, and sells them, and one person purchases a corner lot at a higher price than the rest sells for, and afterwards the vendor, with the consent of the other purchasers, changes the plan of the buildings, so as to make different and better corner lots of those which were not so before, to the manifest lessening of the comparative value of the original corner lot: this would seem to me to be the exercise of a power not consistent with the original contract, and that entitled the first contractor to rescind the bargain. The case before us is much the same.

But I am not satisfied that the defendants' lot was not intrinsically diminished in value. The evidence on this head is not very satisfactory; most of the witnesses speak of the change of its expected value. But some say it is far less valuable than it was; that its value is materially impaired; and some, that it is nearly destroyed; that it might be of some value for a ship-yard, and that it would not be worth while now to erect a storehouse upon it. Certainly, if its value as a commercial site has thus been materially affected, the defendants have a right to object. The purpose for which it was bought is defeated, and instead of giving a higher price for this lot, they ought to have given much less than for others, and, from the evidence, I am inclined to think much less than they contracted to give. For though it is very possible that, after a lapse of years, this lot may turn out to be worth the bid, yet in the meanwhile other lots will be preferred in the market, and it must wait the uncertain result of futurity. What was before within the range of probable calculation, in a commercial point of view, is now transferred into the regions of possibility and doubt.

But there is another point which appears to me to be very important. It is said that the defendants are deprived of no privileges; that they may still erect the storehouse and wharf in the place originally designated. Without considering whether an isolated storehouse and wharf would be worth any body's while to build, or the increased expense to be incurred in making and maintaining such an erection by itself in the basin, I am of opinion that the defendants could not now do so. For, by the terms of sale and plan, it was to be one wharf and pier, to be built by the purchasers, and I think they must all have agreed to erect according to the plan. The plan did not contemplate isolated piers and storehouses, scattered

here and there in the basin, as each individual might choose, within the lines of his lot. "*They* may erect a *storehouse wharf* 200 feet wide, and approaching to within about 400 feet of the present canal basin pier; *which wharf* shall be sustained on the north by a *pier* of timber and stone."—Art. 2. Again, in Art. 5: "It shall be optional with *the purchasers*, whether they will make the proposed extension and wharf; but if *they shall prefer* so to do, *they shall conform to the annexed plan*, subject to the general direction of the burgess and council, and shall construct the same of such materials and in such manner as the said burgess and council shall require." There is, then, to be one wharf and pier, with streets throughout, to be erected by the purchasers—the whole of them—not as many as each may choose respectively. This would not have suited the convenience of commerce, or the uniformity of the plan.

Now, on the prospect of erecting such wharf and pier by the consent of the purchasers, the defendants, in purchasing, had a right to calculate, as that which the interest of all would ultimately bring about. No one doubts but it was considered a valuable privilege by all the purchasers. But of the possibility of this result, the plaintiffs have deprived the defendants: for they have obtained from the other purchasers a relinquishment of their privilege to erect the wharf and pier, and in lieu thereof have procured their agreement to expend their money several hundred feet further out, and to transfer their business to a site which the defendants cannot enjoy, under any circumstances.

Judgment affirmed.