## McCall *versus* Davis.

56   431
177  304
56   431
194  198

56    431
40SC 4197

1. A master and commissioners in partition parted the land of a decedent and laid out a street bounding on the line of an adjoining landholder. Afterwards, but before the partition was put upon record, or the street opened, the latter laid out a town-plot, which was lithographed, exhibiting the street, with streets on his own plot opening into it, but giving no information that it was on his neighbor's land. He sold lots at auction according to the plot, which was exhibited on the day of sale. The plot of the commissioners was afterwards set aside and the street vacated. *Held*, that the vendor was liable for damages to a vendee of lots for the non-existence of the vacated street.

2. In such a case the absence of wilful fraud in the vendor will not relieve him from the injury caused by his mistake.

3. When an owner of ground lays it off into town lots, with streets, &c., for their use, and sells lots accordingly, it is a dedication of these ways to the use of the purchasers.

4. The plan exhibited is evidence of the existence and location of the streets, and when the deed refers to the plan, it is made part of the description and has the same effect as if copied into the deed.

5. The reference is the assertion of a positive fact which, if material, enters into the consideration, and if false is a ground of relief, where its falsity was unknown to the purchaser and he has taken no covenant to protect himself.

6. A positive act or a false representation which misleads another to his hurt, stands on a different footing from silence or representations relating to visible things, which a purchaser can see or guard against by common prudence.

November 21st 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the District Court of *Allegheny county:* No. 111, to October and November Term 1867.

J. G. Davis, the defendant in error, on the 19th of September 1866, entered judgment for $224 against John S. McCall, the plaintiff in error, on a note with warrant of attorney.

On the 1st of October 1866 McCall filed an affidavit stating that the note was given for part of the purchase-money of certain lots, which had been sold to him at public vendue according to a plot representing that there were streets which did not exist. At the application of McCall on this affidavit the court opened the judgment and let the defendant into a defence.

On the trial the defendant proved that the plaintiff, in August 1865, had laid out a town plot of lots called "Orchard addition to East Liberty, a part of the property known as Shakspeare Gardens." The plan consisted of two tiers of lots, one fronting on Shakespeare street, long before opened, and a 10 feet wide alley between the tiers parallel with Shakespeare street; the alley and Shakespeare street were represented as running into East street, which bounded the tiers of lots on the East; there was also represented a street called Union lane, running into East street, further south.

East street and Union lane were not opened or marked on the ground. The lots were sold on the ground and a lithographed plan of the lots, with the streets marked on it, was exhibited by the auctioneer as descriptive of the plan of the lots. It also appeared in evidence that prior to the plaintiff laying out his lots, a master and commissioners appointed by the court to divide a tract of land belonging to Dennison's heirs and adjoining Davis's property, laid off Dennison's tracts in lots and located a street called Dennison along the east line of Davis's land; this is the street which is called "East street" on Davis's plan. The plot of Dennison's land by the commissioners was, after the sale to McCall, set aside and they were authorized to make another, which they did, laying out "Aurelia street," in place of Dennison street, but leaving a foot of land between that street and Davis's land, thus excluding access from his land to the street.

The whole of East street would be on Dennison's land, but no information that it was so was given at the sale.

There was much evidence given on the question of damages.

The court (Hampton, P. J.) charged:—

" The question now presented to the court and jury is, whether the defendant is entitled to damages for the alteration of the Dennison plan of lots, by which this alley is cut off from East street, as it is called on the plaintiff's plan, which was called Dennison street on that plan, and for those portions of Liberty street and Union lane on Mr. McIlwaine's land. All these plans have been given in evidence, and you will have them with you. East street was not laid out on the ground, nor was there anything there to show that a street ever would be laid out and opened. So that any one could see there was nothing on the ground to lead purchasers astray. The sale took place on the ground. The two lots purchased by the defendant were about 140 feet from the line of this street, so that he could very easily have known whether any such street was there.

" The defendant alleges that the plaintiff, or his agents, were guilty of fraud by falsely holding out that such a street would be opened. I can perceive no evidence sufficient to warrant such an inference. ·

\*        \*        \*        \*        \*        \*        \*

" In the absence of any sufficient evidence to show fraud or wilful misrepresentation on the part of the plaintiff or his agents, the case is narrowed down to two questions,—one of law and one of fact. The question of law is, whether there was an implied contract or undertaking on the part of the plaintiff to have these streets, which were to be on other persons' grounds, opened. And the question of fact is, whether the defendant has suffered any damage by their not being opened, and how much ?

[McCall v. Davis.]

"The question of law is reserved for the determination of the court in banc."

The jury found that the defendant had sustained $200 damages.

The court afterwards entered judgment for the plaintiff *non obstante veredicto* for the amount of his judgment and interest.

*Bruce & Negley*, for plaintiff in error, referred to Pennock v. Tilford, 5 Harris 456.

*H. Burgwin*, for defendant in error.

The opinion of the court was delivered, January 7th 1868, by
Agnew, J.—This case seems to have been submitted to the jury upon erroneous principles. Davis laid out a plan of lots called "Orchard addition to East Liberty," and sold them at auction. His map was lithographed and was exhibited to the bidders by the auctioneer, and the sales made thereon, McCall becoming the purchaser of lots 12 and 13; described in his deed as "all those town lots in the Orchard addition to East Liberty, Allegheny county, Pa., known as lots 12 and 13 *on the plot* of said Orchard addition." These two lots fronted upon Shakespeare street, extending back to a ten feet alley. Shakespeare street and the alley were represented on the plot as running into a street called East street, bounding the square in which these lots lay. Without East street, Shakespeare street and the alley ended in a *cul de sac*, and the value of the lots was thereby diminished one-third. The lithographed plan made no distinction between East street and the others laid down on the plot, all being apparently parts of one plan, as if they had been laid off by Davis on his own ground.

There was also a street called Union lane running into East street, near to the square containing the two lots, affording a southerly outlet from Shakespeare street and the alley. It, like East street, appeared to be a part of the same plan. When the sales were made upon this plot, it does not appear that any information was given that East street was not laid out by Davis and was not on his ground. It turned out afterwards that East street had not been laid off by Davis, but by others, and was changed so as to cut off its connection with Shakespeare street and the alley. On the trial McCall contended that Davis was guilty of a fraud, and if not, of a wilful deception; the sale by the plot was such a false representation of the existence and location of East street and Union Lane as entitled him to a deduction from the purchase-money of the difference in the value of the lots made by the loss of East street. The learned judge decided that there was no sufficient evidence of fraud; and instead of submitting it to the jury to find whether there was a misrepresentation of the exist-

6 P. F. Smith—28

[McCall *v.* Davis.]

ence of these streets, and their materiality to the purchaser, such as would justify a detention of any part of the purchase-money on the ground of a partial want of consideration, reserved it as a question of law whether there was an implied undertaking to have these streets opened which were on the grounds of other persons. This question he afterwards decided against McCall. The effect of this ruling was to deny that a sale of village lots at auction by a plan shown to the ·bidders, is a representation of the existence and location of the streets set out in the plan.

In this there was error.

When an owner of ground lays it off into town lots with streets and alleys for their convenient use and, sells his lots accordingly, it is a dedication of these ways to the use of the purchasers. The plan which he exhibits to the bidders is the evidence of their existence and location. In this case his deed also refers to the plot, and thus makes it a part of the description. The effect of this reference is well stated by our Brother Read in the litigated case of Birmingham *v.* Anderson, 12 Wright 253. Where a map or plan is thus referred to (he says) it becomes a material and essential part of the conveyance, and is to have the same force and effect as if copied into the deed. For this many cases are cited. In that case the open space, called on the plan the beach of the river and laid out apparently as a thoroughfare, controlled the plaintiff's boundary. When, therefore, Davis produced his plot to the bidders at the public sale, exhibiting East street as one of the streets in his plan, and referring to nothing on its face to correct this impression or to inform the bidders that it was laid out by others on their own ground, it was an act which affirmed, as loudly as words could speak, that this was a street dedicated by him to the use of those who should become purchasers of his lots. It was an affirmation of a positive fact, which if material entered directly into the consideration of the purchase; and if false is a ground of relief in equity, when its falsity was unknown to the purchaser and when he has taken no covenant to protect himself. East street having here no immediate connection with the subject of the grant, did not fall within the ordinary covenants in the deed. But its materiality to the use of the lots is ·seen in the testimony as to the loss in their value by turning Shakespeare street and the alley, ways actually connected with the lots, into mere *cul de sacs*. A positive act or a false representation of a fact which misleads another to his hurt, stands on a very different footing from mere silence or from those representations that relate to open and visible things, which a purchaser can readily see for himself, or can guard against by common prudence. But the representation of streets and alleys, upon a plan of a new village or town, is the act of the founder, and has not the means of a

ready discovery to enable one by the exercise of ordinary diligence to know its untruth.

The fact that the represented streets are not opened upon the ground affords no means of knowledge or a cause of suspicion as to the fidelity of the plot. The founder of a new town plot rarely opens the streets therein until a sale of lots has taken place. The ground to all appearance retains its original character as land, meadow or orchard, as in this case.

The plot represents the streets to be opened in case of a sale. If, therefore, he should indicate streets in his plan which a correct survey would show to be on the land of others, how are the bidders to know this? At such a public sale of lots by plan no one comes with his surveyor to test the correctness of the plot, but each relies upon the fidelity of the plot exhibited to him, and if he be deceived therein, it is a most graceless answer on the part of the founder, that he might have tested the accuracy of the plan before he bought.

To ask the purchaser of each lot to survey a whole village plan to test its fidelity would be to disappoint the expectation of the founder himself, for he would make but few sales on such terms. In such a case the absence of wilful fraud on part of the vendor will not relieve him from the injury his mistake has entailed upon others. For his own positive acts which mislead and injure he is liable. The authorities are so numerous I shall not discuss them, but content myself with a reference to them; 1 Story's Equity, §§ 192, 193, 195; Tyson v. Passmore, 2 Barr 124; Fisher v. Worrall, 5 W. & S. 479; Smith v. Richards, 13 Peters 36; McFerran v. Taylor, 3 Cranch 270; Jenks v. Fritz, 7 W. & S. 201; Miles v. Stevens, 3 Barr 21; Borough of Erie v. Vincent, 8 Watts 510; Livingston v. Iron Co., 2 Paige Ch. 390; Quick v. Stuyvesant, Id. 92; Gillespie v. Moore, 2 Johnson Ch. 596. The language of C. J. Marshall in McFerran v. Taylor, *supra*, hits the very point of this case: "He who sells property on a description given by himself is bound to make good that description, and if it be untrue in a material point, although the variance be occasioned by a mistake, he must still remain liable for that variance."

The error of the learned judge below seems to have arisen out of his impression as to the nature of the defence. He calls it a set-off, and supposes it to rest upon some implied contract, agreement or covenant, and says the question may be simplified by inquiring whether, if the defendant had paid all the purchase-money, he could maintain an action of covenant against the plaintiff for the damages he seeks to set off in this action. If he could, then the defence set up will avail, but not otherwise. But the defendant was asking the interposition of equity against the payment of money which he alleged it to be inequitable he should

[McCall *v.* Davis.]

be compelled to pay; and the ground of interposition was the false act of the plaintiff, his misrepresentation by the exhibition of his plot of a fact material to the value of the lots he sold, and which entered, therefore, directly into the consideration of his bond.    He did not stand in the attitude of one seeking to recover back money paid upon the footing of a contract of indemnity or of covenant against the loss.    The error of the court was in not submitting the question of false representation to the jury upon the facts as they existed at the time of the sale upon the exhibition of the plot to the bidders.    The reservation of the question of law took from the jury the whole inquiry into the character of the plot, its tendency to mislead and into what occurred between the parties at the time of making the sale; and it put the case solely upon the existence of a contract, express or implied, to open East street and Union lane.

Judgment reversed, and a *venire de novo* awarded.