Merritz, Appellant, *v.* Circelli et ux.

Argued January 4, 1949. Before MAXEY, C. J., DREW, STERN, PATTERSON, STEARNE and JONES, JJ.

*Herman Blumenthal,* with him *A. Bernard Hirsch,* for appellant.

*C. Brewster Rhoads,* with him *Joseph N. DuBarry, 4th, Francis J. McCarthy* and *Montgomery, McCracken, Walker & Rhoads,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, March 21, 1949:

At least as early as the seventeenth century the High Court of Chancery in England decreed specific performance of an agreement with an allowance of compensation to the plaintiff because of the defendant's inability fully to carry out his contract: (*Cleaton v. Gower,* Rep. temp. Finch, 164, (Ch. 1674)). The practice thus born has become so generally adopted that it is now a commonplace doctrine in equity jurisprudence, it being firmly established that, where it is not in the power of a vendor to make title to all that he has covenanted to convey, the vendee has the right to take what the vendor can give with an allowance out of the purchase money for the deficiency: *Burk's Appeal,* 75 Pa. 141, 145; *Andrien v. Heffernan,* 299 Pa. 284, 288, 149 A. 184, 185.

The problem presented in the case now before us is whether such relief is available to plaintiff under the particular facts here involved.

Defendants, Michael and Sarah E. Circelli, entered into a written agreement with plaintiff, Harold Merritz, whereby they agreed to sell and convey to him three certain pieces of vacant ground in Philadelphia as described by metes and bounds. The agreement stated that "description of said lots and plot plan of the same is hereto attached and made part of said agreement." The plot plan thus referred to showed that the lots were bounded by Elmwood Avenue, Lindbergh Boulevard, 57th Street and 58th Street. In the space marked Elmwood Avenue there were printed the words "all improvements" and in the space marked 57th Street and the space marked Lindbergh Boulevard the word "sewer". The purchase price was stated to be $12,500 of which $1,000 was paid at the time the agreement was signed. The premises were to be conveyed "free and clear of all incumbrance and easements", subject to an exception not here relevant.

Before the date fixed for settlement plaintiff learned that the sewers in the beds of 57th Street and Elmwood Avenue could not be connected with any dwellings that might subsequently be erected on the lots in question unless there were first paid to the City of Philadelphia a sewer service charge required by the terms of an ordinance. He also ascertained that, while there was in fact a sewer in the bed of Lindbergh Boulevard, it could never be used by the occupants of such dwellings because it was constructed along the far or remote side of the boulevard and was intended to service only the properties on that side; the cost to these lots of installing an available sewer in Lindbergh Boulevard would be approximately $8,500.

Plaintiff filed a bill in equity praying that defendants be compelled to convey to him the lots as described in

the agreement but with an abatement in the purchase price of a sum representing the cost of constructing an available sewer in Lindbergh Boulevard and the sewer service charge which would be imposed when connections were made with the sewers in 57th Street and Elmwood Avenue. The testimony revealed that the allowance thus requested would amount to approximately $9,300. The court below dismissed the bill and plaintiff appeals.

The chancellor found that the word "sewer" on the portion of the plan designated Lindbergh Boulevard indicated that there was a sewer under that avenue *"available for use by plaintiff* as the purchaser of the lots fronting thereon." He further found that such representation, while untrue, was not made for the fraudulent purpose of misleading plaintiff but innocently and by mistake; this finding was justified because the burden to prove fraud was upon plaintiff but no testimony was offered by him to establish it.[1] The fact, however, that the representation was not made with fraudulent intent does not absolve defendants from liability: *McCall v. Davis,* 56 Pa. 431, 435. Nor is it a defense that plaintiff might have ascertained the falsity of the representation had he inspected the public records, for he was not required to make such an investigation but could rely on the representation made so as to hold defendants liable in case it proved false in fact: Rest. Torts, § 540 and comment (b) ; *McCall v. Davis,* 56 Pa. 431, 435; *Lynch v. Palmer,* 237 Mass. 150, 129 N. E. 374; *Loverin v. Kuhne,* 94 Conn. 219, 108 A. 554; 33 A. L. R. 853 et seq.; 23 Am. Jur. 972, § 163.

---

[1] The chancellor found also that at the time plaintiff signed the agreement he knew that the representation as to the Lindbergh Boulevard sewer was not true; the burden, however, to establish such knowledge was upon defendants, and, as no evidence was presented by them to support it, the court's finding in that respect was erroneous and must be disregarded.

This brings us to the real question in the case, which is whether, assuming such liability of the vendors to exist, plaintiff is entitled to the remedy which he seeks in the present proceedings. It is not in every instance that specific performance of a contract for the sale of land will be enforced, for an agreement may be perfectly good and binding upon both parties and nevertheless the court may relegate the plaintiff to whatever remedy he may have at law, if, in the exercise of a discretion, not arbitrary or capricious but governed by principles of reason, the chancellor is of opinion that in the particular case before him it would be contrary to equity and justice to decree specific performance.[2]

There are two reasons why the equitable remedy of specific performance with an abatement should not be granted under the circumstances of the present case.

(1) The agreement between the parties did not, of course, involve any contractual obligation on the part of defendants to convey title to the Lindbergh Boulevard sewer nor did it contain any warranty in regard thereto; there was merely a misrepresentation of a fact as to the availability of a sewer which lay under the bed of a public street and not within the lines of the lots which were the subject of the agreement of sale. Only in cases where there is a defect in the vendor's title or a deficiency in the quantity of the land to be conveyed does the doctrine of specific performance with an abatement prevail; where there is merely a claim based upon a representation collateral to the contract the only remedy available to the vendee is rescission or the recovery

---

[2] *Henderson v. Hays*, 2 Watts 148, 151-153; *Workman v. Guthrie*, 29 Pa. 495, 510; *Burk's Appeal*, 75 Pa. 141, 146; *Rennyson v. Rozell*, 106 Pa. 407, 412; *Friend v. Lamb*, 152 Pa. 529, 533, 534, 25 A. 577, 578; *Maguire v. Heraty*, 163 Pa. 381, 387, 30 A. 151, 152; *Latta v. Hax*, 219 Pa. 483, 68 A. 1016; *Welsh v. Ford*, 282 Pa. 96, 99, 127 A. 431, 432; *Rupniewski v. Miazga*, 299 Pa. 190, 195, 149 A. 193, 194, 195; *Spotts v. Eisenhauer*, 31 Pa. Superior Ct. 89, 93, 94.

of damages at law. Thus, where there was an innocent representation by a vendor in regard to the mileage of fencing on the land being sold, such mileage being in fact less than the amount stated, the vendee was refused specific performance with a deduction from the purchase price in respect of this deficiency: *Rutherford v. Acton-Adams,* [1915] A. C. 866. Where there was an innocent representation as to the area in grass of the land included in the contract of sale, specific performance with an abatement was refused, the court pointing out that this was not a case of defect in title or deficiency in quantity of the land but only a misrepresentation as to its quality: *Schmidt and Bellshaw v. Greenwood,* 32 N. Z. L. R. 241. Where there was a mistake in regard to the limits of the area covered by a town ordinance imposing building restrictions, the vendee was denied specific performance with an abatement: *Millman v. Swan,* 141 Va. 312, 127 S. E. 166. And where there was an incorrect representation that the rentals of the premises being sold were a certain specified amount, the court, stating that specific performance with an abatement should not be extended to cover defects other than deficiencies in title or in the area of the land to be conveyed, refused to decree specific performance with a deduction in the purchase price: *Radel v. 134 West Twenty-fifth Street Building Corporation,* 226 N. Y. S. 560. See 40 Harvard Law Review 476, 478.

(2) When the extent to which a good title can be given is relatively small, equity will not assess damages as compensation but will leave the vendee to his remedy at law; it is only when the defect is comparatively incidental and does not involve such a large deduction from the purchase price as practically to constitute a new contract between the parties that equity will grant relief. Thus, where the requested allowance, representing a partial lack of title on the part of the vendors and also the incumbrance of a mortgage on the property, would

have exhausted nearly the whole of the purchase money, the chancellor refused, in the early case of *Wheatley v. Slade,* 4 Sim. 126 (Ch. 1830), to decree specific performance with an abatement. And in *Rudd v. Lascelles,* [1900] 1 Ch. 815, it was stated that equitable relief should be confined to cases where the actual subject-matter was substantially the same as that called for in the contract; in that case the purchase price was £3500 and the deduction claimed was £1000; the court stated that "It would be a great hardship to enforce the contract against her [the vendor] with so large an abatement . . ., and I cannot assume that she would have sold for such a reduced sum." See also *Chicago, Milwaukee & St. Paul Rwy. Co. v. Durant,* 44 Minn. 361, 46 N. W. 676; *Chapman v. Lott,* 144 Miss. 841, 110 So. 793; *Corby v. Drew,* 55 N. J. Eq. 387, 36 A. 827. "Where . . . the existent subject matter is so small a part of the original that a suit for specific performance with compensation is really little more than a suit for damages, equity sees no reason to take cognizance of the matter.": 40 Harvard Law Review 476, 478.[3] In the present case, to compel defendants to convey the lots to plaintiff upon receipt of approximately $3,200 instead of the agreed price of $12,500 would be to enforce a contract so radically different from that which the parties entered into and so beyond their contemplation as to work both a probable hardship and an injustice; under such circumstances it would seem far better to leave plaintiff to whatever remedy may be open to him

---

[3] In some cases the principle thus stated has not been applied where there were several co-owners and only one or more, but less than all, signed the contract of sale, it being held that the vendee might obtain a decree of specific performance for the conveyance of whatever interests the signatories had upon payment of the contract price less a proportionate abatement for the interests not acquired: *Erwin v. Myers,* 46 Pa. 96; *Napier v. Darlington,* 70 Pa. 64; *Hollis v. Bland,* 62 Pa. Superior Ct. 505.

on the law side of the court. Of course if he were willing to accept a conveyance conditioned upon his paying the entire $12,500 stipulated in the contract he would be entitled to specific performance.

As far as the service charge in connection with the future use of the 57th Street and the Elmwood Avenue sewers is concerned, it has been definitely held that a charge of that nature is not a lien or incumbrance on the title since it will come into existence only if, in the future, dwelling houses or other structures are erected on the premises and connections with the sewer are actually made; until then nothing is payable: *Gilham v. Real Estate Title, Insurance & Trust Co. of Philadelphia,* 203 Pa. 24, 52 A. 85; *Perkinpine v. Hogan,* 47 Pa. Superior Ct. 22.

Upon plaintiff's paying the entire purchase price stipulated in the contract a decree of specific performance should be entered by the court below. Otherwise the decree dismissing the bill is affirmed without prejudice to plaintiff's rights at law; the parties to bear their respective costs.