**MORRISON OIL AND GAS COMPANY, Plaintiff-Appellant-Cross-Appellee,**

v.

**A. C. BURGER et al., Defendants-Appellees-Cross Appellants.**

**No. 27523.**

United States Court of Appeals, Fifth Circuit.

March 4, 1970.

---

Edward L. Atkinson, R. D. Lemon, Lemon, Close & Atkinson, Perryton, Tex., for appellant.

Don L. Patterson, L. A. White, Culton, Morgan, Britain & White, Amarillo, Tex., for A. C. Burger.

Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.

MORGAN, Circuit Judge:

Plaintiff-appellant Morrison Oil and Gas Company appeals from a jury verdict which awarded a decree of specific performance of two contracts but failed to require performance of a third contract. Appellees in this case are A. C. Burger, George Aycock, Jr., and David Taylor who were defendants below.

Appellant Morrison is an oil and gas lease broker with its principal office in Amarillo, Texas. It is primarily engaged in the business of buying, selling and trading in oil and gas leases. Morrison was the holder of leases on three pieces of land, i.e. the Buzzard lease (Section 59), Wilson lease (Section 23), and the Neufeld lease (Section 22). These leases were obtained from Sinclair Oil Company whereby Morrison had the right to drill oil and gas wells on these properties. However, the drilling had to be commenced by a specified time or the leases would be forfeited—the date line for the Buzzard lease was March 1, 1965; however, an extension to April 3, 1965, was obtained from Sinclair—the Wilson lease ex-

pired on May 13, 1965, if drilling had not commenced—the Neufeld lease expired on December 7, 1965, under the same terms.

During February of 1965, Morrison entered into a verbal agreement with Burger dealing exclusively through Taylor to sell Burger oil and gas leases covering these three sections of land. Under the verbal agreement, Burger was obligated to pay Morrison the sum of $47,000, to drill not less than three wells and if two of the sections were productive of oil no more than nineteen wells, and to permit Morrison to reserve a $15,000 production payment in the Buzzard lease and a five percent overriding royalty in the Wilson and Neufeld leases. On April 14, 1965, only the oral agreement covering the Buzzard lease was reduced to writing. All of Morrison's dealings with Burger were conducted through Burger's agent Taylor.

Two wells were drilled and completed as commercial gas wells and a third well was staked but never actually commenced. The two completed wells were on the Buzzard and Wilson properties respectively and were commenced within the time limit established by Sinclair thereby preserving the leases. Neither Morrison nor the parties furnishing labor, material and services in connection with the drilling of the wells had any contact whatsoever with Burger until after the completion of these two wells. At or about the time the two wells were completed, Morrison had received cash in the sum of $23,000 of the $47,000 and the amount of $24,000 remained due and owing under the verbal agreement. Morrison at this time realized that it had had no personal contact with Burger and had no proof of Taylor's authority to drill the wells on Burger's account. It should be noted that the above is basically Morrison's account of the transactions. Burger asserted in his counterclaim of 1965 that George L. Aycock, Inc., entered into an oral agreement with Morrison, under which Aycock obtained an option to acquire from Morrison the oil and gas leases covering the Wilson property, conditioned on the drilling of a well, and

Burger was the assignee and nominee of Aycock. Burger also alleges that there was a similar agreement between Aycock and Morrison covering the Neufeld land and that he (Burger) again was assignee of Aycock. Morrison denies that Aycock had acquired an option covering the Wilson or Neufeld sections or that he had any dealings with Aycock.

Morrison testified in that he had had no personal association with Burger, he contacted him on July 8, 1965, on the telephone and Burger denied any knowledge of the wells or the actions of Taylor. Immediately thereafter, and on July 9, 1965, Morrison attempted to terminate the agreement by telegram to all affected parties. However, Burger testified that Morrison had sent a representative to talk with Burger and Taylor, and that on the same day they talked to Morrison on the phone and reached an agreement. In denial, Morrison testified that he did dispatch an agent to meet with Burger but no agreement was reached because Burger wished to alter the original agreement to such a degree it was unsatisfactory to him. Morrison then cancelled the agreement. The testimony is quite cloudy as to the above, but one fact that is substantiated by the evidence is that Morrison instituted on July 16, 1965, a trespass to try title suit to recover title and possession of the leasehold estates. Morrison testifies that Burger then ratified the acts of his agent Taylor and removed the case to federal court where a receiver was appointed. In his counterclaim to the complaint filed in the trespass to try title suit, Burger contended that the leases were his and he should recover the rights to the property.

The suit lay dormant for approximately three years. When set for trial in October, 1968, Morrison states that economic necessity forced it to abandon its title suit and to attempt to force Burger to pay all expenses incurred in the drilling of the wells, including the recovery of the $24,000 still owed to Morrison. In other words, Morrison attempted to enforce the verbal agreements with Burger.

Accordingly, by instituting his suit on the agreement and attempting to force specific performance of the leases, Morrison was in effect acquiescing in theory with the counterclaim of Burger. However, the principal issue and the one upon which this suit is on appeal is the amount Burger should pay Morrison. Morrison contends that it was paid $15,000 for the Buzzard lease as per the written agreement of April 14, 1965, and $8,000 of the $16,000 owed on the Wilson lease. Therefore, Morrison alleges that Burger owes $8,000 on the Wilson lease and $16,000 on the Neufeld lease—a sum of $24,000. Burger contends that due to Morrison's wrongful filing of suit the drilling was not commenced on the Neufeld property and that the lease with Sinclair was lost; therefore, since Morrison could not deliver this lease as bargained, Burger should not have to pay the $16,000 on the Neufeld lease. Additionally, since the oil and casinghead gas rights under the Wilson lease were lost in that Burger could not explore them due to Morrison's suit, Burger claims he owes nothing on the Wilson lease.

The trial judge submitted special issues to the jury.[1]

The jury answered that the title suit by Morrison constituted good cause for Burger's failure to commence a well on the Neufeld lease. Also, they answered that the value of the oil and casinghead gas rights under the Wilson lease on July 16, 1965, was zero. Accordingly, the District Court ordered Burger to pay the sum of $8,000. On a motion by Morrison, pursuant to Rule 52(b), Federal Rules of Civil Procedure, the Court entered findings and conclusions as to why the Court refused to grant Morrison a judgment against Burger for the $16,000 cash consideration on the Neufeld section.

1. SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the plaintiff, Morrison Oil & Gas Co., had good cause for its failure to tender to A. C. Burger an assignment of the leases on the Wilson Tract (Section 23) after the well had been drilled thereon by A. C. Burger?"

Answer: "Yes".

SPECIAL ISSUE NO. 2

"What do you find from a preponderance of the evidence to be the fair market value of the oil and casinghead gas rights under the Wilson lease (Section 23) on or about the 16th day of July, 1965?"

Answer: "0".

SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that plaintiff, acting by and through its President, Malcolm Morrison, and A. C. Burger, acting by and through an agent, made a verbal agreement with respect to the Neufeld lease (Section 22)?"

Answer: "Yes".

"If you have answered Special Issue No. 3 'Yes', and only then, you will answer the following issues Nos. 4, 5, and 6:"

SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that the substantial terms of such verbal agreement were that:

"(a) Plaintiff agreed to sell and convey the Neufeld lease (Section 22) to A. C. Burger?

Answer: "Yes."

"(b) A. C. Burger agreed to pay plaintiff $16,000 in cash for the Neufeld lease (Section 22)?"

Answer: "Yes."

"(c) A. C. Burger agreed that plaintiff would reserve an overriding royalty of 5% of ⅞ on the Neufeld lease (Section 22)?"

Answer: "Yes."

"(d) A. C. Burger agreed that he would commence a well on Section 22 before the expiration of the lease on said section?"

Answer: "Yes."

SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that the agreement by A. C. Burger and plaintiff concerning the Neufeld lease (Section 22), if you have found there was such an agreement, contained an option for Burger to either purchase or reject the purchase of said lease?"

Answer: "It was not an option".

SPECIAL ISSUE NO. 6

"Do you find from a preponderance of the evidence that the filing of plaintiff's trespass to try title suit constituted good cause for A. C. Burger's failure to commence a well on the Neufeld lease (Section 22), if you have found that he agreed to commence such a well?"

Answer: "Yes".

■ Morrison objects to Special Issue No. 6 in which the jury determined that Morrison's trespass to try title suit constituted good cause for Burger's failure to commence a well on the Neufeld lease. This objection is without merit. The record amply supports this conclusion of the jury as they viewed the facts after hearing testimony by all parties concerned. Blount Brothers Corp. v. Reliance Insurance Co., 370 F.2d 733 (5 Cir. 1967), cert. den. 387 U.S. 907, 87 S.Ct. 1689, 18 L.Ed.2d 627.

■ Secondly, Morrison contends that there was but one agreement concerning all three leases and that it must be enforced in its totality. However, the trial judge appears to have interpreted the specific answers of the jury adversely to this position and concluded there were three separate contracts. This ruling is supported by the facts and the jury's answers to the special issues. Morrison's testimony described each of the leases by stating the property and the consideration to be given for each lease which would indicate three separate contracts. However, as to the direct question as to the separability of the leases, Morrison stated that there was a "package deal". Although it is true that Burger deposed before the trial that it was a "package deal", in court he testified that this was wrong and there were three separate agreements. We must accept the facts unless the findings of the trial court are clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); New West Transport Corp. v. S/S Angelina, 410 F.2d 1147 (5 Cir. 1969). The findings of the trial judge in this case are not clearly erroneous.

■ It is unquestioned and both parties to this action agree that the Buzzard lease should be enforced, with Burger having the oil and gas rights and Morrison retaining the compensation, i.e., $15,-000 paid in 1965. As to the Wilson lease, Burger has already remitted $8,000 of the $16,000 due to Morrison. Burger contended at the trial that since the oil and casinghead gas rights had expired,

he should not have to pay the remaining $8,000. The jury answered that these rights had no value on July 16, 1965, and the trial court properly ruled that Burger should pay Morrison $8,000. There is only minor contest concerning these two leases. The main thrust of Morrison's appeal centers on the facts surrounding the Neufeld lease.

■ In that we are to abide by the facts as found by the jury and the trial court, we have concluded that the decision of the lower court should be affirmed. Morrison argues that a grant of specific performance is not a matter of right but within the discretion of the court. Nash v. Conatser, 410 S.W.2d 512 (Tex. Civ.App.1966). However, Morrison continues by asserting that the Texas law on partial specific performance with allowance of an abatement is not well developed or defined, and cites Merritz v. Circelli, et al., 361 Pa. 239, 64 A.2d 796 (1949), as a guide established by another state. In that case it was determined that an abatement may not be made on specific performance that would be a hardship or cause the consideration to be sold for a greatly reduced price. Morrison then urges that a reduction of $16,000 from a total sum of $47,000 is too great an abatement. However, the fallacy in Morrison's argument is that the District Court determined and the facts support, that there are three separate contracts. Thereby, the District Court required specific performance of the Buzzard and Wilson contracts but denied specific performance of the Neufeld contract since the consideration no longer existed. The question of abatement is not involved and we need not consider the cases Morrison presents on this question. The lower court's decision to deny specific performance of the Neufeld lease is based on the sound rule of law that when a lessor actively asserts to a lessee that his lease is terminated, or is subject to cancellation because the lessee has failed to comply with obligations under the lease, or for any other reason, the obligations of lessee to lessor are suspended during the time such claims of forfeiture are being assert-

ed. Kothmann v. Boley, 158 Tex. 56, 308 S.W.2d 1 (1958); English v. Jones, 154 Tex. 132, 274 S.W.2d 666 (1955). Morrison did not attempt to rescind his cancellation of the Neufeld contract until 1968, well after the lease had terminated and the consideration failed to exist.

Affirmed.