David GUNSCH, Plaintiff and Appellant,

v.

Tony GUNSCH, Leona Gunsch, Fred Bauer,
and Arthur Bieber, Defendants
and Respondents.

No. 7439.

Supreme Court of North Dakota.

June 30, 1955.

Rehearing Denied Aug. 26, 1955.

J. K. Murray, Bismarck, for plaintiff and appellant.

Floyd B. Sperry, Golden Valley, for defendants and respondents Leona Gunsch, Fred Bauer and Arthur Bieber.

Tony Gunsch, defendant and respondent, per se.

MORRIS, Judge.

This appeal involves two causes of action, the first of which is for the foreclosure of a chattel mortgage given by Tony Gunsch to the plaintiff, David Gunsch, covering certain personal property consisting of farm machinery and twenty-six head of cattle to secure the sum of $4,000. The second cause of action seeks foreclosure of a land contract for the sale of a section of land in Mercer County from David Gunsch to Tony Gunsch.

Tony Gunsch, by separate answer, alleges that he has substantially complied with all of the terms of the contract for sale of the land involved. By way of counterclaim he alleges that he is the owner of the land and that the plaintiff and two other persons, namely, Dan Gunsch and John Gunsch, jointly and by force, coercion, fraud, and trickery, appropriated the 1951 crop raised on said land to the value of approximately $11,700 and converted and appropriated the 1952 crop raised on said land belonging to the defendant in the amount of $13,000. He further counterclaims with respect to the foreclosure of the chattel mortgage and alleges that the plaintiff, David Gunsch, together with Dan Gunsch and John Gunsch, has converted and appropriated for his own use and benefit certain personal property, being a major portion of that described in the chattel mortgage, and that the value of the property converted is $10,000.

The defendants, Leona Gunsch, Fred Bauer, and Arthur Bieber, made one answer in which they allege that the chattel mortgage has been paid. They further allege that Leona Gunsch became the owner of the livestock described in the chattel mortgage and also became the owner of the land, or the interest of Tony Gunsch therein, by virtue of a decree of divorce rendered June 28, 1952, in an action brought by Leona Gunsch against Tony Gunsch. They further allege in the nature of a counterclaim that the plaintiff has broken the contract for sale of the land by selling a portion of the minerals thereunder, con-

trary to the terms of the contract; that he has received certain oil lease rentals for which the plaintiff has not accounted; that the defendant, Leona Gunsch, has offered to pay the plaintiff the balance due him under the contract and prays that the court determine the amount due the plaintiff under the contract and deduct therefrom the value of the minerals sold by the plaintiff and oil lease rentals received by him; that Leona Gunsch be permitted to pay the balance due on the contract; and that the court require the plaintiff to execute a sufficient transfer of the land to her.

This is one of a cluster of actions stemming from the divorce of Tony Gunsch by Leona Gunsch and a decree awarding Leona Gunsch certain property of those parties. About a month before the divorce action was instituted and on February 19, 1951, David Gunsch entered into a written contract in which he agreed to sell a section of land to his son, Tony, for $16,000 and to convey the same by warranty deed upon payment of the purchase price. At the time of the execution of the contract for deed, Tony Gunsch also executed a chattel mortgage for $4,000, due November 15, 1951, being the instrument involved in this action. It recites:

"It is understood and agreed between the parties hereto that this Chattel Mortgage is given as additional security to a Land Sale Contract, dated this date, in the sum of $16,000.00, between the Parties hereto, * * * and that this chattel mortgage will be released of record and satisfied from the first money received on said contract up to and including the sum of $4,000.00 and interest: * * *."

The contract also recites that it is not assignable without the written consent of the vendor. It also provided that two-thirds of the crop raised upon the land was to be delivered to the vendor and the proceeds applied upon the contract until it was paid in full, with interest at the rate of four per cent per annum. The buildings were to be insured for $4,000. Before entering into the contract and on June 3, 1950, the ven-

dor, David Gunsch, had sold one-half of the minerals underlying said real estate but made no mention of this sale in the contract and Tony Gunsch had no knowledge of it at the time the contract was executed.

On June 28, 1952, judgment was rendered in the divorce action decreeing, among other things, that Leona Gunsch have all of the rights of Tony Gunsch in the contract for deed and giving her absolute ownership of the land, subject to the rights of David Gunsch as vendor under the contract. She was also awarded the livestock described in the chattel mortgage, with certain exceptions. Tony Gunsch was awarded the farm machinery and some of the cattle.

It is clearly established that David Gunsch received from the proceeds of crops raised on the land, to be applied upon the purchase price according to the terms of the contract, $4,100 in 1951 and $1,500 in 1952. According to the terms of the contract, the chattel mortgage was to be paid and satisfied out of the first moneys received. In the divorce action the plaintiff testified:

"Q. Now, when you sold this land to your son, you took a chattel mortgage from him for $4000.00? A. For security for the first payment.

"Q. But that first payment now has been paid? A. Yeah.

"Q. And you are ready and willing to satisfy that mortgage and take it off the records, are you not? A. Yeah."

■ It is clear that the chattel mortgage has been paid in full and the trial court properly rendered judgment for the dismissal of this cause of action.

With respect to plaintiff's second cause of action for the foreclosure of the land contract, it appears that the plaintiff David Gunsch, some time prior to the year 1950, became the owner of a section of land in Mercer County. On June 3, 1950, the plaintiff and his wife, Christena Gunsch, executed and delivered to W. C. Kaufman, Jr., a mineral deed conveying an undivided one-

half interest in all of the oil, gas, and other minerals in and under and that may be produced from the land described therein, which is the section of land involved in this cause of action. This deed bore 55 cents in revenue stamps. It was recorded in the office of the register of deeds of Mercer County on June 15, 1950.

On June 3, 1950, the plaintiff, David Gunsch, and his wife executed to and delivered to W. C. Kaufman, Jr., an oil and gas lease covering the land involved herein whereby the lessee agreed to deliver to the lessors one-eighth part of all the oil produced and saved from the leased premises. This lease also provided for a delay rental of $160 per year for ten years. It was recorded in the office of the register of deeds of Mercer County on June 15, 1950.

On February 19, 1951, David Gunsch sold to Tony Gunsch the land herein involved upon the contract which we have already described.

The contract was accompanied by a note executed by Tony Gunsch payable to David Gunsch in the sum of $16,000 with interest at four per cent per annum payable annually, "according to conditions of Farm Contract dated this date between the parties hereto."

The contract contained the provision that

"It is further agreed and understood that no assignment of the premises or any part thereof, or of said contract, or any pledge thereof, shall be valid unless the consent of the party of the first part shall be endorsed thereon or permanently attached thereto."

At the time the contract was entered into, Tony Gunsch was in possession of the premises as a tenant and continued in possession after the execution of the contract, until possession was wrested from him by his brothers, Dan Gunsch and John Gunsch, under circumstances which more particularly appear in the case of Gunsch v. Gunsch, No. 7438, N.D., 67 N.W.2d 311, wherein we determined that Dan Gunsch and John Gunsch had no interest in the property.

In the judgment in the divorce case it was decreed that the contract for the sale of this real property to Tony Gunsch be the absolute property of Leona Gunsch and that she have all the rights of Tony Gunsch thereunder and that she be "the absolute owner thereof, together with all improvements and buildings thereon, any homestead rights of the Defendant, or any other rights that he may have in said real estate, being hereby terminated, the Plaintiff be the absolute owner of said real estate, subject to the amount owing under the Contract for the purchase thereof."

In this action commenced September 2, 1952, the vendor, David Gunsch, asks that the court determine the amount due on the contract and decree a foreclosure thereof in the same mode and manner as a foreclosure of a real estate mortgage.

Upon the trial of this action the court found that Leona Gunsch, by virtue of the judgment in the divorce action, became entitled to all of the rights of Tony Gunsch in the contract for the sale of the section of land involved herein, subject to the rights of David Gunsch under the contract; that David Gunsch was paid from crops raised on the land in 1951 the sum of $4,100 and that out of the crop raised on the land in 1952 he received $1,500. The court also found that David Gunsch, after the execution of the contract and for the years 1951, 1952, and 1953, received $240 in delay rentals under the oil and gas lease and that of this sum Tony Gunsch was entitled to $160 and Leona Gunsch entitled to $80. He awarded Tony Gunsch judgment against David Gunsch for the sum of $160 as his share of the oil lease rental.

With respect to Leona Gunsch, the court further found:

"17. That the amount to which the plaintiff was entitled under said contract, less an abatement for the failure to convey all of the minerals in said property, was the sum of $14,500.00, the plaintiff being entitled to that amount under said contract, with interest thereon from the 19th day of

February, 1951, to the 15th day of November, 1951, at the rate of 4% per annum, or the sum of $435.00, which is deducted from the sum of $4100.00, paid to the said plaintiff on the 15th day of November, 1951, and after said payment was made, there was a balance of $10,835.00 owing upon the remainder of said principal, the plaintiff being entitled to 4% interest upon said sum, and which interest amounts to $433.20, to be paid out of the payment of $1,500.00 made out of the 1952 crop, and which leaves a balance on said principal of $9,768.20; that the said defendant, Leona Gunsch, is entitled to a further credit in the sum of $544.50, being the amount collected by this plaintiff for insurance paid upon a building, upon said premises, destroyed during the term of said contract, and she is entitled to a further credit in the amount of $80.00 for oil lease money paid to the said plaintiff for delayed oil rentals upon said real estate for the year of 1953, under said oil and gas lease, leaving a balance of $9,143.70 due to the said plaintiff under said contract, as of November 15, 1952.

"18. That the income from the crops and hay grown and raised upon said premises, in the year of 1953, as is shown by the report of the receiver appointed herein, is the sum of $5,487.43, from which there is to be deducted the expense of combining and trucking said crops, in the amount of $686.53, and the expenses of said receivership, amounting to the sum of $175.00, making a total expense in said receivership proceeding, of the sum of $861.53, leaving a net balance of $4,625.90, and that the plaintiff herein is entitled to the sum of $3,083.90 out of said 1953 income from said property, to be applied upon said contract, leaving a balance of $6,059.77 to be paid unto the said plaintiff in full satisfaction of the amount due him under said contract for deed, in addition to which the said plaintiff is entitled to be reimbursed for the sum of $117.64, for the 1952

taxes, paid by him upon said property, and which taxes were tendered to the said plaintiff by the said Leona Gunsch, the said plaintiff having refused to accept the same, and upon the payment, or legal tender of said amounts, the said Leona Gunsch is entitled to a warranty deed conveying said section of land to her, or to the order and judgment of this court, transferring and decreeing said property unto her in the event that the said plaintiff refuses to execute said deed, in conformity with said contract, to the said Leona Gunsch."

In accordance with the court's findings and conclusions, judgment was entered dismissing both the first and second causes of action of plaintiff's complaint. Judgment was entered in favor of Tony Gunsch for $160 and costs taxed in the sum of $10.

With respect to Leona Gunsch, judgment was entered upon her counterclaim adjudging and determining her to be the owner of the section of land, subject to the amount owing to the plaintiff under the contract, and it was further adjudged that

"said contract upon said real estate, now owned by the said Leona Gunsch, is of full force and effect, and that the amount due and owing thereon is the sum of $9,143.70, which includes the interest up to the 15th day of November, 1952, and that two-thirds of the proceeds of the 1953 crops upon said premises, being the sum of $3,083.93, shall be paid thereon, leaving a balance of $6,059.77, to be paid to the plaintiff, in addition to said crop proceeds, and which, with the payment of the 1952 taxes upon said property, in the amount of $117.64, shall constitute full payment and satisfaction of the amounts due to the said plaintiff, under said contract, upon payment of which amounts, or the legal tender thereof, the said plaintiff shall execute and deliver unto the said defendant, Leona Gunsch, a good and sufficient deed conveying said premises, less one-half of the minerals therein, an abatement of the amount having

been made to the said Leona Gunsch, for said one-half of the minerals, in the amount of $1,500.00, which amount was deducted from said contract price."

The plaintiff and appellant argues that the rights of the vendor and vendee are fixed by the written contract; that the vendee, Tony Gunsch, has failed to perform his contract, has abandoned the land; that the plaintiff is not bound by the judgment in the divorce action; that Leona Gunsch is not entitled to take over the contract as against this plaintiff; and that he is entitled to foreclose the contract to protect his purchase price.

We have already determined in the case of Gunsch v. Gunsch, supra, that Tony Gunsch did not abandon the land. However, the court in the divorce action did take away from Tony Gunsch his rights under the contract and his interest in the land and award them to Leona Gunsch. It transferred to her the interest of Tony Gunsch in the contract and in the land. We must now determine what are her present rights as against the vendor, David Gunsch.

■ This is an action to foreclose the contract for the sale of land to Tony Gunsch. It is an equitable action. D. S. B. Johnston Land Co. v. Whipple, 60 N.D. 334, 234 N.W. 59; Vail v. Evesmith, 62 N.D. 99, 241 N.W. 719; Raad v. Grant, 43 N.D. 546, 169 N.W. 588.

■ Assuming that the action of the court in the divorce case in decreeing the transfer to Leona Gunsch of the interest of Tony Gunsch in the contract and in the land amounts to an assignment, we point out and emphasize that the provision against assignment of the contract without consent of the vendor does not make an assignment or attempted assignment or transfer ground for declaring a default or forfeiture of the contract. The vendor does not claim that the action of the divorce court in decreeing the transfer to Leona Gunsch worked a forfeiture or gave the vendor the right to foreclose. But he does contend that he is not compelled thereby to accept Leona in place of Tony as vendee.

In the case of Johnson v. Eklund, 72 Minn. 195, 75 N.W. 14, 15, the court had before it an executory contract for the sale of real estate that provided that no assignment of it should be valid unless countersigned by the vendor. The court said:

"It will be noted that there is no provision that an assignment without Eklund's written approval should forfeit the contract, or give the vendor the right to declare it forfeited; and certainly the courts will not read any such right into the contract by implication. There is nothing personal in the nature of the contract. All that the vendor was interested in was the payment of the purchase money at maturity. If he received this, it was wholly immaterial to him who paid the money or who got the land. At most, this stipulation against an assignment is merely collateral to the main purpose of the contract, designed as a means of securing and enforcing performance of what was undertaken by the vendee, to-wit, the prompt payment of the purchase money. When the vendor has received all his purchase money, he has received all that he is entitled to, and all that the provision against an assignment was intended to secure: Under such circumstances, the fact that the assignment to plaintiff was not countersigned by the vendor is no defense to an action by her to compel a conveyance."

The foregoing quotation has been quoted with approval in Bull v. Weisbrod, 185 Iowa 318, 170 N.W. 536, and Nielsen v. Baldridge, 173 Or. 555, 146 P.2d 754. On the other hand, it has been criticized in Lockerby v. Amon, 64 Wash. 24, 116 P. 463, 35 L.R.A.,N.S., 1064, Ann.Cas.1913A, 228.

In Cowart v. Singletary, 140 Ga. 435, 79 S.E. 196, 202, 47 L.R.A.,N.S., 621, Ann.Cas. 1915A, 1116, which cites Johnson v. Eklund, supra, it is said:

"It would hardly be held that a vendor and vendee of land could contract that the vendee should never assign or yield possession of the land

sold, and thus preclude it from being seized and sold for the vendee's debts. As to a contract for the sale of land, such a provision is simply for the benefit or security of the vendor. If the vendor receives the full purchase price, he needs no further security, and can no longer insist on a provision against alienation or assignment, the object of which was to secure such payment or to limit his dealings in regard to the sale to his vendee."

In Cheney v. Bilby, 74 F. 52, 64, 20 C.C.A. 291, 36 U.S.Appeals 720, the court in considering a clause of a contract providing "that no assignment of the premises or of this contract shall be valid unless with the written consent of the first party and by the indorsement of the assignment hereon" said:

"This provision of the contract was obviously intended to prevent the assignment of the same, while it was executory to persons who might not be able or well disposed to faithfully execute it. It was a provision which was inserted in the agreement to enable Cheney, the vendor, to control the selection of an assignee thereof so long as the agreement remained in part unperformed, or so long as he was interested in the choice of an assignee who had the requisite means and ability to do what remained to be done. Inasmuch, then, as the provision in question was only intended to secure the faithful performance of the agreement by the purchaser or his assignee, it would be both unreasonable and inequitable to hold that Cheney, the vendor, is privileged to take advantage of the provision, to avoid performance on his part, after the entire amount of the purchase money has been promptly paid or tendered. We must assume, whatever may be the fact in this regard, that the provision against assigning the contract without the vendor's consent, was inserted therein for an honest and legitimate purpose; that is to say, for the purpose of securing the punctual payment of the purchase money, and a full compliance with other executory agreements, either by the original purchaser or by his assignee."

The holding in the foregoing cases and others is summarized in an annotation found in 138 A.L.R., page 211, as follows:

"The majority of the cases take the view that the fact that the assignment of a land contract is made in violation or disregard of a provision thereof that the vendee shall not assign, or that he shall not assign without the vendor's written consent, or that an assignment made without the vendor's consent shall not be valid, does not preclude the assignee from maintaining a suit to compel specific performance, if the contract has been fully performed by the vendee and assignee or either of them, or if the assignee offers and is able to complete the performance. The theory adopted by the courts which so rule is that the stipulation against assignment is ordinarily to be construed as intended merely to safeguard performance on the part of the vendee, so that when full performance has been rendered, or is presently offered, the stipulation becomes of no further consequence."

In this case it appears that the proceeds of the 1951 and 1952 crops have been paid to the vendor. The proceeds of the 1953 crop are in the hands of the court through a receiver appointed for the purpose of conserving the crop and its proceeds and are available for payment upon the contract. The proceeds of the 1954 crop are also in custodia legis, being in the hands of a receiver, subject to disposition by the court as equity may require. Leona Gunsch, to whom the divorce judgment transferred the vendee's interest in the contract and in the land, offers to pay the balance due upon the contract, thereby assuring to the vendor full purchase price of the land that he contracted to convey. It is clear to us that the contract is not in default and equity will not decree its foreclosure, but, on the other hand, will permit Leona Gunsch to pay the balance of the

purchase price, whereupon conveyance to her will be decreed.

■ The vendor challenges the findings of the trial court with respect to two credits allowed in favor of Leona Gunsch in determining the amount that he found to be due on the contract. One of these credits is the sum of $544.50 insurance collected by the vendor for the destruction of a building on the premises after the execution of the contract and while the vendor was no longer in possession. The loss thus occasioned was that of the vendee. The destruction of the building would not entitle the vendee to abate the purchase price to the extent of the loss. On the other hand, it is clear that the vendor should not be allowed to collect the full purchase price and at the same time collect and keep the proceeds of an insurance policy on the destroyed building. The contract required that the buildings at all times be kept insured for both fire and windstorm in the sum of $4,000 with a loss payable clause in favor of the vendor. When a loss occurred for which the vendor collected insurance, the amount so collected must be applied in reduction of the amount due on the contract. This is in accordance with the general rule. Our determination in this respect is supported by abundant authority. Russell v. Elliott, 45 S.D. 184, 186 N.W. 824, 22 A.L.R. 556; 55 Am.Jur., Vendor and Purchaser, Section 403; 66 C.J., Vendor and Purchaser, Section 815; Cyclopedia of Real Property Law, Jones, Permanent Edition, Volume 1, Section 422; Godfrey v. Alcorn, 215 Ky. 465, 284 S.W. 1094, 51 A.L.R. 925; Brady v. Welsh, 200 Iowa 44, 204 N.W. 235, 40 A.L.R. 603.

The trial court directed that the plaintiff be required to specifically perform the contract but found that, due to the fact that on June 3, 1950, and before entering into the contract, the plaintiff had conveyed an undivided one-half interest in all of the oil, gas, and other minerals in and under or that might be produced on the land, the plaintiff had placed himself in such a position that he could not completely perform and convey full title as he agreed to do in the contract. The trial court also found that the property conveyed by the mineral deed was of the value of $1,500 and granted an abatement of the purchase price to the sum of $14,500, which he determined was the amount that the plaintiff was entitled to receive. The plaintiff challenges this abatement with respect to the power of the court to make it and the amount allowed.

■ It appears to be the general rule that a vendee who seeks specific performance of a contract for the sale of land may secure an abatement of the purchase price where it appears that there is a deficiency in the quantity of the land which the vendor agreed to convey. Henschke v. Young, 224 Minn. 339, 28 N.W.2d 766; Eppstein v. Kuhn, 225 Ill. 115, 80 N.E. 80, 10 L.R.A., N.S., 117 and note; 49 Am.Jur., Specific Performance, Section 105; Merritz v. Circelli, 361 Pa. 239, 64 A.2d 796, 7 A.L.R.2d 1325 and note; 81 C.J.S., Specific Performance, § 162(c). In Marshall v. Caldwell, 41 Cal. 611, it is said:

"The contract, as already remarked, shows that the plaintiff sold the whole land, and not, as he now contends, only his interest in the land. True, he could not convey any greater interest in the land than he held, but the contract recites a sale of the entire title. The covenants which, by the terms of the contract, are to be inserted in the deed, do not limit the extent of the interest attempted to be sold, for upon a sale in fact of the entire title, the vendor may restrict the covenants, whether express or implied, in such manner as the parties may agree. Nor indeed will the plaintiff be permitted to aver, in the face of the agreement, that he sold less than the whole title to the land, unless he can also aver that the written contract, by reason of fraud, mistake, or the like, does not show the real contract.

"Upon the discovery by the vendee, that the plaintiff held only the undivided half of the land, he was entitled to proceed at once to rescind the

contract; but he was not obliged to adopt that course. He was entitled to proceed, as he has done in this case, to have the contract specifically enforced to the extent of the plaintiff's interest in the land."

In Knudtson v. Robinson, 18 N.D. 12, 118 N.W. 1051, 1052, this court refused specific performance with abatement where the amount of the deficiency was one-third of the quantity agreed to be conveyed. In that case it was said:

"Appellant contends that specific performance of the contract should be ordered under the facts of the case as far as it was within the power of Robinson to comply with the contract, and that plaintiff should be awarded an abatement of the total purchase price to the extent of the value of the homestead and the 160 acres separately owned by the wife. The fact that 320 acres of the land embraced in the contract was not subject to conveyance by Robinson destroyed the mutuality of the contract, so far as the remedy is concerned. Robinson could not have compelled Knudtson to accept a conveyance of the land embraced in the contract less the 320 acres, even with compensation for the deficiency. If the deficiency had been an immaterial quantity, specific performance with an abatement of the price would lie, but the principle of specific performance with abatement for the deficiency is not to be applied where the deficiency is so great as in this case, amounting to one-third of the number of acres involved."

■ In this case the vendor was in a position to convey all of the surface and one-half of the minerals. It is clearly a proper case for the application of the general rule that where there is a deficiency in the quantity of land contracted to be sold the vendee or, as in this case, one standing in the position of the vendee, is entitled to specific performance to the extent of the vendee's ability to perform with a proper abatement of the purchase price to the extent of the value of the deficiency.

■ We now come to the question of the amount of abatement to be allowed. It appears that when the vendor sold an undivided one-half interest in the minerals prior to the execution of the contract he received not to exceed $550. The exact value of real estate is usually difficult to determine. The problem is especially difficult when the value is that of undiscovered minerals. It is a matter of common knowledge that the value of property conveyed by mineral deed in western North Dakota is derived chiefly from oil or coal, or both. The value of such property is more difficult to establish outside of proven areas than is the value of ordinary real estate. Such values are highly speculative. The price paid for the property in question is of much weight in determining value at or near the time of sale.

"Evidence of the price at which property, the value of which is an issue, brought bona fide at a voluntary sale at some time near the time as of which value is to be determined is competent evidence of its value and is one of the best and most satisfactory standards of estimating actual value, although it is not in any case conclusive of value." 20 Am.Jur., Evidence, Section 373.

See also Thaw v. Town of Fairfield, 132 Conn. 173, 43 A.2d 65, 160 A.L.R. 679; 32 C.J.S., Evidence, § 1049(c).

■ One witness who lived about seven miles from the land in question was permitted to testify that he received $25 per mineral acre for minerals that he sold in the fall of 1952. Another witness, some of whose land was about five miles from the Gunsch land, was permitted to testify over objection that in the fall of 1952 he was offered $30 per mineral acre. There was no effort to compare property concerning which these witnesses testified with that of the property involved in this case or to show the presence or proximity of discovered oil or other minerals. The witnesses were neither experts nor men of experience in the field of mineral values. It would appear that under the circum-

stances presented by this record sufficient foundation for the admission of this evidence had not been laid. Moreover, this evidence at best is of extremely doubtful probative value and will not sustain the trial court's finding that the value of the deficiency is $25 per mineral acre or a total of $1,500. We determine that the value of the deficiency is the sum of $550, the amount for which the minerals were sold.

The trial court correctly determined the issues presented by plaintiff's first and second causes of action. The record with respect to the counterclaim of Leona Gunsch was not sufficient to permit us to determine all the issues arising thereon. We retained jurisdiction and directed the trial court to make further findings as to funds in the hands of a receiver appointed by the court in order to determine the moneys that are available for application upon the contract and we further directed the trial court to make a determination of the amount required to be paid by Leona Gunsch to complete payment in full upon the contract after the application thereon of the money in the hands of the receiver. The trial court complied with our direction and certified to this court his further findings and the record upon which such findings were made, whereupon we heard further argument on the additional record and findings.

It appears with respect to the counterclaim that the amount originally allowed by the trial court to Leona Gunsch for damages arising from the sale of minerals by the vendor should be modified to the extent that the abatement credited on the contract is fixed in the sum of $550; that after crediting such abatement there remains due to the plaintiff, David Gunsch, on the contract for the purchase of the real estate herein involved the sum of $10,133.60; that in addition to that amount the plaintiff, David Gunsch, is entitled to be paid the sum of $117.64, being 1952 taxes on the land paid by the plaintiff.

The entire amount due the plaintiff, David Gunsch, has been deposited by the receiver and by Leona Gunsch in the Bank of Beulah, Beulah, North Dakota, as a tender of full performance of the contract, to be paid to David Gunsch upon his transfer to her of the real estate herein involved.

We approve the findings and additional determination of the trial court. The judgment appealed from is modified so as to direct the conveyance by David Gunsch of the real estate herein involved, except one-half of the minerals previously conveyed, to Leona Gunsch by warranty deed as provided in the contract and upon presentation of such conveyance at the Bank of Beulah, Beulah, North Dakota, there shall be paid to David Gunsch the sum of $10,251.21 from the moneys therein on deposit as above set forth, being the total amount due on the contract and for taxes paid by him.

The judgment shall further provide that in event the plaintiff, David Gunsch, fails to tender the warranty deed within thirty days from the filing of our remittitur in the district court the judgment shall constitute a full, complete, and unconditional transfer of title from David Gunsch to Leona Gunsch of the South half (S½) and the Northeast quarter (NE¼) of Section Thirteen (13), and South half of Southeast quarter (S½SE¼) and South half of Southwest quarter (S½SW¼) of Section Twelve (12), all in Township One hundred forty-three (143), North, Range Eighty-nine (89), West of the Fifth Principal Meridian, as the same is laid down and described on the plat thereof on file and of record in the office of the Register of Deeds of Mercer County, North Dakota, except one-half (½) of the minerals previously conveyed by David Gunsch, and that a certified copy thereof shall be entitled to be filed and recorded in the office of the Register of Deeds of Mercer County as evidence and notice of such transfer and that the said David Gunsch thereafter may withdraw from the Bank of Beulah from the funds deposited therein by the receiver and Leona Gunsch the sum of $10,251.21.

The judgment appealed from, modified as herein provided, is affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.