Jack D. GREEN, Plaintiff, Appellant and Cross–Appellee,

v.

Warren GUSTAFSON and Judy Gustafson, Defendants, Appellees and Cross–Appellants.

Civ. No. 910106.

Supreme Court of North Dakota.

March 19, 1992.

Lawrence D. DuBois (argued), of Fleming, DuBois & Trenbeath, Cavalier, for plaintiff, appellant, and cross-appellee.

David L. Petersen (argued), of Dahl, Greenagel, Currie & Petersen, Grafton, for defendants, appellees, and cross-appellants.

LEVINE, Justice.

Jack Green appeals from a district court judgment quieting title to certain property in him but requiring him to pay Warren and Judy Gustafson for the value of improvements they made to the property. The Gustafsons cross-appeal. We reverse the judgment and remand for further proceedings.

In 1947, Marvin Green and his two sons, Robert and George, acquired a house in Milton, North Dakota. Although the three held title as tenants in common, Marvin occupied the home as his residence. George died in 1963 and his ⅓ interest passed by intestate succession to his five children.

Marvin died in 1972. His will bequeathed his ⅓ interest in the property to

Robert. William Heigaard was appointed executor of Marvin's estate and also served as attorney for the estate.

Robert died intestate in June 1975, before his father's estate was settled. Robert's sole surviving heir was his son, Jack. Heigaard was hired to probate Robert's estate by the personal representative, Lynn Bjarnason.

In August 1975, Heigaard, as executor of Marvin's estate, advertised the property for sale on bids. The advertisement did not indicate the divided ownership of the property. Warren and Judy Gustafson submitted the high bid of $7,550 for the property. Heigaard accepted their bid and the Gustafsons tendered a check for ten percent of the price. The check was never cashed, however, and remained in Heigaard's file until this action was commenced in 1988.

After the Gustafsons' bid was accepted, Heigaard allowed them to take possession of the property and authorized them to make improvements.[1] At the time they purchased it, the house had been vacant for over three years and was uninhabitable. There was no running water, no heat, and the electrical wiring was substandard. Over the course of the next thirteen years, the Gustafsons completely renovated the house, including installation of new plumbing, new wiring and a new heating system, at a cost of over $45,000. They also paid all utilities and insurance.

On November 6, 1980, the Final Decree of Distribution in Robert's estate was issued and the estate was closed. This decree purported to transfer the property in its entirety to Jack Green, although Robert had held title to only a ⅓ interest in the property.

In December 1980, Heigaard commenced a quiet title action on behalf of Marvin's estate. Named defendants included George Green's five children and Robert Green, who had died in 1975 and whose estate had already been distributed. The suit did not name Jack Green, Robert's estate or the Gustafsons as defendants, nor were they served. Judgment was entered in 1981 quieting title in the Marvin Green estate and against the named defendants.[2]

The Gustafsons continued to live in the house without objection until 1986, when they learned that the real estate taxes for 1976 through 1985 were delinquent and the property was in danger of loss to the county. Heigaard, as executor of Marvin's estate, negotiated with the county to reduce the outstanding taxes to $3,000. The Gustafsons then paid $3,000 to the estate and the estate in turn paid the $3,000 to the county. Since 1986, the Gustafsons have regularly paid the taxes.

When it became apparent that Jack Green would not consent to a conveyance to the Gustafsons, Heigaard, on August 22, 1987, issued a personal representative's deed of distribution, purportedly conveying Marvin's estate's interest in the property to Jack. Marvin's estate was finally closed on November 4, 1987.

In May 1988, Jack commenced an eviction action against the Gustafsons. They answered and counterclaimed, asserting ownership of the property. The case was transferred to district court by stipulation. Jack served an amended complaint, seeking to quiet title, to evict the Gustafsons and to recover nearly $30,000 in damages for fair rental value. The Gustafsons filed an amended answer and counterclaim, seeking to quiet title in themselves or, alternatively, seeking reimbursement for the value of the improvements made to the property.

The case was tried to the court. The court determined that Jack was the owner of the property and that the Gustafsons were not entitled to specific performance of the contract for sale. The court concluded, however, that the Gustafsons had held under color of title in good faith and accordingly were entitled to recover the value of the improvements. *See* Section 32–17–08, N.D.C.C. The court reserved the question of the value of the improvements, and gave

---

1. Jack Green challenges the trial court's finding that Heigaard authorized improvements. In light of our disposition of this case we find it unnecessary to reach this issue.

2. No issue has been raised regarding the propriety of the judgment quieting title. There is no indication on the record that that judgment was appealed.

Jack the choice of two options: (1) he could ratify the sale to the Gustafsons, or (2) he could retain the property but pay the Gustafsons the value of the improvements, less the value of the Gustafsons' use and occupancy.

Jack elected not to ratify the sale and so a second trial was held, limited to issues of valuation. The trial court found that the present value of the property was $44,000; the value of the improvements was $39,000; the value of the unimproved house and lot was $5,000; and the value of the Gustafsons' use and occupancy of the unimproved house and lot from September 1975 to December 1990 was $4,575. The court again gave Jack two options: (1) he could convey the property to the Gustafsons for $9,575 ($5,000 unimproved value plus $4,575 use and occupancy), or (2) he could retain the property by paying the Gustafsons $34,425 ($39,000 for improvements less $4,575 for use and occupancy).

Jack appealed, asserting that the Gustafsons are not entitled to recover for the value of improvements and challenging various findings of fact on value. The Gustafsons cross-appealed, asserting that the trial court erred when it refused to enforce the contract for sale.

The dispositive issue on appeal is whether the trial court erred in quieting title in the property in Jack or whether the Gustafsons had a valid claim of title in the property. Our resolution of this issue requires careful juxtaposition of several divergent legal theories and produces a result which lies somewhere between the two extremes urged by the parties.

The first issue presented is whether Heigaard had authority to sell the property. The parties concede that this issue is governed by the provisions of Title 30.1, N.D.C.C., the codification of the Uniform Probate Code.

Section 30.1–18–11, N.D.C.C. [U.P.C. § 3–711], gives a personal representative broad powers over the property of the estate:

"*Powers of personal representatives— In general.*—Until termination of his appointment, a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court."

Section 30.1–18–15(6), N.D.C.C. [U.P.C. § 3–715], specifically authorizes the personal representative to "[a]cquire or dispose of an asset, including land ..., for cash or on credit, at public or private sale"; and Section 30.1–18–15(23) provides that the personal representative may "[s]ell, mortgage, or lease any real or personal property of the estate or any interest therein."

Section 30.1–18–14, N.D.C.C. [U.P.C. § 3–714], provides broad protections to parties dealing with the personal representative:

"A person who in good faith either assists a personal representative or deals with him for value is protected as if the personal representative properly exercised his power. The fact that a person knowingly deals with a personal representative does not alone require the person to inquire into the existence of a power or the propriety of its exercise...."

The intent of these provisions is to adequately protect persons dealing in good faith with a personal representative and to avoid the necessity of court orders in routine probate administrations. *See* 1 Wellman, Uniform Probate Code Practice Manual 319 (2d ed. 1977). As further noted by Professor Wellman:

"Section 3–714 explicitly protects purchasers from the possibility that a sale which a PR may have made was unnecessary or at too low a price or even against the terms of a will. The purchaser is explicitly excused from examining the terms of the will, court records relating to the appointment, or other sources that might be relevant to the question of whether the sale is proper as between the fiduciary and those entitled to the inheritance." 1 Wellman, Uniform Probate Code Practice Manual, *supra*, at 407.

Jack concedes that these statutes authorized Heigaard to sell the estate's interest in the property to the Gustafsons.[3] However, Jack asserts that the purported sale of the entire property, when the estate included only a lesser interest, rendered the sale void. The Gustafsons assert that because Heigaard was also the attorney for Robert's estate, which at the time of the sale included an undivided ⅓ interest in the house, he also had apparent authority to sell that interest in the property. Thus, they assert, the protections of Section 30.1-18-14, N.D.C.C., apply.

We agree with Jack that Heigaard's authority to sell the property extended only to Marvin's estate's interest therein, which consisted of Marvin's ⅓ interest and the ⅓ interest of George's heirs which was quieted in Marvin's estate in the action to quiet title. The Uniform Probate Code provisions that authorize the personal representative to sell property extend only to property included in the estate. It is axiomatic that the personal representative is not thereby empowered to exercise dominion over property which was never owned by either the decedent or the estate. Furthermore, the advertisement of the sale clearly indicated that Heigaard was selling the property as the executor of Marvin's estate. Heigaard did not purport to act on behalf of Robert's estate during the sale transaction. Under these circumstances, Heigaard's actions could not, and did not, affect title to the ⅓ interest held by Robert's estate and subsequently deeded to Jack.

However, Heigaard's inability to convey the entire property does not render the contract a nullity. Parties often enter into a contract for a future conveyance when the seller does not presently have clear title. *See, e.g., McLaughlin v. Lambourn*, 359 N.W.2d 370, 373 nn. 1 & 4, 374 (N.D.1985). This is not a case of mistake, where the parties never agreed to the same performance. At the time he entered into the contract for sale, Heigaard expected to clear the title and fully intended to perform. His subsequent inability to do so did not affect the validity of the contract with the Gustafsons and they were entitled to seek appropriate remedies for breach against the estate.

Those available remedies include specific performance, albeit not the complete performance envisioned in the contract. The well-established general rule is that "where there is a deficiency in the quantity of land contracted to be sold the vendee ... is entitled to specific performance to the extent of the [vendor's] ability to perform with a proper abatement of the purchase price to the extent of the value of the deficiency." *Gunsch v. Gunsch*, 71 N.W.2d 623, 631 (N.D.1955). As stated in Pomeroy's venerable treatise:

> "*Partial incapacity.*—Where the defendant's title fails as to a part of the subject-matter, or is partially defective, the plaintiff *may* elect and be entitled to a specific enforcement of the contract, so far as it can be enforced; and *may* claim and receive compensation for the deficiency."

4 Pomeroy, Equity Jurisprudence § 1405b (5th ed. 1941); *see also* 11 Williston, Contracts § 1436 (3d ed. 1968). The rule applies with equal force where the seller, agreeing to convey full title, owns only a partial interest in the property. *See, e.g., Townsend v. Vanderwerker*, 160 U.S. 171, 182, 16 S.Ct. 258, 261, 40 L.Ed. 383, 386–387 (1895); *Chastain v. Schomburg*, 258

---

3. The parties have not cited Section 30.1-12-01, N.D.C.C. [U.P.C. § 3-101], which provides that property devolves upon death to the devisees or heirs. In *Feickert v. Frounfelter*, 468 N.W.2d 131, 132 (N.D.1991), we construed the statute to mean that property passes upon death, not upon distribution. However, both the statute and *Feickert* recognize that devolution is subject to administration, and the personal representative has "power over the title" during the administration of the estate. *Feickert, supra*, 468 N.W.2d at 132; Section 30.1-18-11, N.D.C.C. [U.P.C. § 3-711]. The personal representative has specific authority to sell or dispose of property of the estate, *see* Section 30.1-18-15(6) & (2), N.D.C.C. [U.P.C. § 3-715], and the provisions of Section 30.1-12-01 do not restrict that authority.

If a personal representative improperly disposes of property of the estate, the remedy of the devisee or heir is directly against the personal representative. Section 30.1-18-12, N.D.C.C. [U.P.C. § 3-712].

Ga. 218, 367 S.E.2d 230, 231 (1988); *Atkin v. Cobb*, 663 S.W.2d 48, 51 (Tex.Ct.App. 1983); *Bee Jay Industrial Corp. v. Fina*, 98 A.D.2d 738, 469 N.Y.S.2d 438, 440 (1983).

Applying the rule to this case, the Gustafsons had a valid contract with the estate for sale of the property. The estate never owned Robert's ⅓ interest, which subsequently devolved to Jack. The estate did, however, own a ⅔ interest in the property and the Gustafsons were entitled to seek specific performance of the contract to that extent, with an abatement of the purchase price.

The parties have not cited Section 32–04–08, N.D.C.C., which provides:

> *"Remedy of specific performance must be mutual.*—Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compelled specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance."

In *Knudtson v. Robinson*, 18 N.D. 12, 118 N.W. 1051 (1908), the court strictly applied an earlier codification of the statute, holding that a contract for sale of 960 acres of land could not be enforced against a seller who only owned 640 acres of the specified land.

Later cases, however, suggest a more liberal application of the statute. In *Gunsch, supra*, the buyer under a contract for deed sought partial specific performance where the seller had previously conveyed one-half of the mineral rights to a third party. The court discussed *Knudtson, supra*, but held that the purchaser was entitled to specific performance to the extent of the seller's ability to perform, with a substantial abatement for the value of the lost mineral rights. *Gunsch, supra*, 71 N.W.2d at 631.

In *Jonmil, Inc. v. McMerty*, 265 N.W.2d 257, 259 (1978), the court further addressed its more liberal interpretation of Section 32–04–08:

> "At first blush this statute suggests that there must be complete, full mutuality on both parties before the remedy of specific performance is applicable. However, on further analysis, and particularly upon review of the case law, as found in *Alfson v. Anderson*, 78 N.W.2d 693 (N.D.1956), and its predecessors, it appears to us the statute merely requires that both parties must have an obligation and a remedy. The obligation may be either in the form of damages or specific performance. It is not necessary that both parties to a contract are entitled to the identical remedy of specific performance."

This view of the statute was reaffirmed in *Wolf v. Anderson*, 334 N.W.2d 212, 215 (N.D.1983).

Furthermore, it has been recognized that the statute is merely a declaration of the long-standing common law rule. *See, e.g., Knudtson v. Robinson, supra*, 118 N.W. at 1052; *Pederson v. Dibble*, 12 N.D. 572, 98 N.W. 411, 412 (1904). We presume that, in specifically adopting the common law rule, the legislature intended its application to extend no further than under the common law. As noted in *Reeves & Co. v. Russell*, 28 N.D. 265, 148 N.W. 654, 655 Syll. ¶ 8, 9 (1914), "[t]he common law must ... be considered in the construction and application of statutes declaratory thereof, and such statutes construed and applied as continuations of or legislative declarations of the common law.... The statute will not be presumed to alter the common law 'other than what has been specified and besides what has been plainly pronounced.'" *See also* 2B Sutherland, Statutory Construction § 50.02 (1992) ("Where a statute attempts to restate the existing common law, the latter becomes an especially important factor in determining legislative intent.").

Under the established common law rule, lack of mutuality did not preclude a purchaser from seeking partial specific performance where the seller did not own all of the property included in the contract. *See, e.g., Gunsch, supra*, 71 N.W.2d at 630–631; 4 Pomeroy, Equity Jurisprudence §§ 1405, 1405a, 1405b (1941); 11 Williston, Contracts § 1434 (1968). Thus, we conclude that Section 32–04–08, N.D.C.C., as a

declaration of the common law, does not bar specific performance in this case.

Jack asserts, however, that enforcement of the contract is barred by the statute of frauds. We have recently discussed the applicable statutory provisions in *Williston Cooperative Credit Union v. Fossum*, 459 N.W.2d 548, 551 (N.D.1990):

"The general rule is that contracts for the sale of real property and transfers of real property interests must be made by an instrument in writing. Section 9–06–04, N.D.C.C.; Section 47–10–01, N.D.C.C. However, part performance of an oral contract which is consistent only with the existence of the alleged contract removes it from the statute of frauds. *Poyzer v. Amenia Seed & Grain Co.*, 409 N.W.2d 107 (N.D.1987). While partial payment of the purchase price alone is not justification for enforcing an oral contract to convey land, partial payment together with other acts such as possession or the making of valuable improvements may be sufficient to take a contract out of the statute of frauds. *See Parceluk v. Knudtson*, 139 N.W.2d 864 (N.D.1966). When improvements to the property are relied upon as part performance of an oral contract for purposes of removing it from the statute of frauds, the improvements made on the land must be valuable, substantial, and permanent. *Vasichek v. Thorsen*, 271 N.W.2d 555 (N.D.1978). Thus, part payment of the purchase price and substantial improvements to the property may remove an oral contract from the statute of frauds and create an enforceable contract constituting an enforceable equitable property interest."

■ Jack argues that there has not been sufficient part performance in this case to remove it from the statute of frauds. Specifically, he asserts that no part of the purchase price was paid because the Gustafsons' check was never cashed, thereby rendering insufficient any partial performance by the Gustafsons.

We need not determine whether tender of a check which is not cashed constitutes partial payment of the purchase price, because partial payment is not a necessary prerequisite to enforcement of the oral con-

tract. In *Syrup v. Pitcher*, 73 N.W.2d 140, 146 (N.D.1955), the court held:

"[W]e do not believe that part payment of the purchase price is always an indispensable element of part performance of an oral contract. Where a purchaser takes possession under an oral contract for the sale of land with the consent of the vendor and while in such possession makes valuable and lasting improvements on the premises in reliance on the contract, there is a sufficient part performance to take the case out of the statute of frauds, although no part of the purchase price be paid."

*See also Anderson v. Mooney*, 279 N.W.2d 423, 428–429 (N.D.1979). It is undisputed that the Gustafsons took possession pursuant to the oral contract of sale and made substantial permanent improvements to the property in reliance upon that contract. We conclude that, under these circumstances, the statute of frauds does not bar specific enforcement of the oral contract of sale of the property.

Jack also asserts that he now holds legal title to the property by the August 22, 1987 deed of distribution from Marvin's estate and that the Gustafsons cannot specifically enforce the contract against him. This was apparently the basis for the trial court's refusal to grant specific performance.

■ Jack's argument, however, ignores the effect of the doctrine of equitable conversion, which provides that once parties have entered into a valid, enforceable contract for the sale of land, equitable title vests in the purchaser and the seller holds bare legal title as security for payment of the balance of the purchase price. *United Bank of Bismarck v. Trout*, 480 N.W.2d 742, 748 (N.D.1992). Equity regards the realty as "converted" into personalty. *Trout, supra*, 480 N.W.2d at 748. The doctrine applies only when there is a valid contract for sale which could be specifically enforced. *Trout, supra*, 480 N.W.2d at 748. Where there has been sufficient partial performance to remove an oral contract from the statute of frauds, an enforceable contract exists which creates an enforceable, equitable property interest. *Willi-*

*ston Cooperative Credit Union v. Fossum, supra,* 459 N.W.2d at 551.

■ When Heigaard executed the deed of distribution, purporting to convey the property to Jack on August 22, 1987, the Gustafsons had a valid, enforceable contract to purchase the ⅔ undivided interest held by the estate. Thus, the Gustafsons had equitable title to that ⅔ interest and the estate retained bare legal title as security for the purchase price.

■ It is axiomatic that a deed cannot convey a greater interest or estate in the property than the grantor has. 23 Am. Jur.2d Deeds § 336 (1983); *see Feiler v. Wanner,* 340 N.W.2d 168, 171 (N.D.1983). A deed which purports to convey a greater interest than that held by the grantor conveys only the lesser interest actually held by the grantor. *Van Sickle v. Olsen,* 92 N.W.2d 777, 784 (N.D.1958). Thus, Heigaard's deed of distribution to Jack conveyed only bare legal title, held as security for payment of the purchase price. The property had been "converted" to personalty by the doctrine of equitable conversion, and that is all Jack received by the deed. *See United Bank of Bismarck v. Trout, supra,* 480 N.W.2d at 748. Accordingly, the Gustafsons are entitled to enforce the agreement against Jack, and, upon payment of the purchase price agreed upon by the personal representative of Marvin's estate and the Gustafsons, with an appropriate abatement, may compel Jack to convey title to the ⅔ interest. Jack retains the ⅓ undivided interest in the property that he received through Robert's estate.

■ An action to quiet title is equitable in nature. *Rohrich v. Rohrich,* 434 N.W.2d 343, 346 (N.D.1989); *Lindvig v.*

*Lindvig,* 385 N.W.2d 466, 474 (N.D.1986). Similarly, specific performance and equitable conversion are grounded in equity and governed by equitable principles. *Alfson v. Anderson,* 78 N.W.2d 693, 701 (N.D. 1956); *Clapp v. Tower,* 11 N.D. 556, 93 N.W. 862, 863 (1903). Accordingly, our review in this case has been guided by equitable principles.

■ We conclude that the trial court erred in quieting title to the property in Jack. The Gustafsons have an enforceable, equitable property interest in a ⅔ undivided interest in the property. We reverse the judgment and remand for further proceedings in accordance with this opinion.[4] The parties shall bear their own costs on appeal.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., concur.

GIERKE, J., a member of the Court when this case was heard, resigned effective November 20, 1991, and did not participate in this decision. JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate in this decision.

---

**4.** Our holding makes it unnecessary to decide the other issues raised by the parties. However, based upon the parties' prior actions, it is likely that partition of the property will eventually be necessary. We therefore will briefly address one issue which may recur.

The primary point of contention between the parties has been who is entitled to the value of the improvements made by the Gustafsons. The effect of our holding today is that the Gustafsons have held equitable title to an undivided interest in the property. Accordingly, the parties have been, in effect, co-tenants. In a partition action, a co-tenant may be granted an al-

lowance for the value of substantial, necessary, and permanent improvements which enhance the property's value. *E.g., Berg v. Kremers,* 181 N.W.2d 730, 736 (N.D.1970); *Gjerstadengen v. Hartzell,* 9 N.D. 268, 83 N.W. 230, 233 (1900). In the event partition is sought, it will be for the trial court to determine the extent of the allowance to the Gustafsons for the improvements, keeping in mind that partition is an equitable remedy governed by equitable principles. *See Schnell v. Schnell,* 346 N.W.2d 713, 715 (N.D. 1984); *Eastman v. Nelson,* 319 N.W.2d 134, 136 (N.D.1982).