**Albert DUPECK and Bessie Dupeck, Plaintiffs,**

v.

**UNION INSURANCE COMPANY OF AMERICA, a corporation, Defendant, Roger Riggs, Interpleader Defendant.**

**No. S 61 C 12.**

United States District Court
E. D. Missouri,
Southeastern Division.

July 2, 1962.

488

Jones & Jones, Kennett, Mo., for plaintiffs.

Riddle, O'Herin & Newberry, Malden, Mo., for Union Ins. Co. of America.

Harry D. Barnett, Memphis, Tenn., for Roger Riggs, interpleader defendant.

HARPER, Chief Judge.

This civil action was initiated by plaintiffs in the Circuit Court of Dunklin County, Missouri, on June 20, 1961, in an effort to recover under a fire insurance policy issued by defendant. Defendant, Union Insurance Company, timely removed to this court and jurisdiction attaches under 28 U.S.C.A., §§ 1441, 1446; and as hereafter explained, under 28 U.S.C.A. §§ 1335, 1397 and 2361.

Plaintiffs allege ownership of a building and the furniture and fixtures therein; defendant's issuance of a fire insurance policy thereon; plaintiffs' compliance with its terms; a totally destructive fire while the policy was in effect; and demand for payment and refusal.

Defendant's answer states as defense: (1) Valid and proper cancellation of the policy before the fire, and (2) plaintiffs' lack of insurable interest when the fire occurred. Defendant also counterclaims in the nature of interpleader pursuant to 28 U.S.C.A. §§ 1335, 1397 and 2361, pleading plaintiffs' conveyance of the "insured property" to one Riggs on October 2, 1958, defendant's issuance on October 8th of $25,500.00 worth of insurance to Riggs on the property; Riggs' claim for recovery after the fire and, consequently, possible subjection to double liability. Plaintiffs' reply puts all of these allegations at issue. Defendant asks the court to find that it is liable to neither Riggs nor the Dupecks, or, in the alternative, that the court state to whom the defendant is liable.

Issues for determination as presented by the pleadings at the time of trial are simply whether or not the Dupecks had conveyed the property and lost insurable interest; whether or not their policy had been cancelled; and whether or not there was possible liability on the part of defendant to Riggs.

The testimony in this case was lengthy due to much testimony dealing with many collateral issues which are of little significance other than perhaps reflecting on the credibility of the interpleader defendant Riggs. The following undisputed facts are listed in approximate chronology:

(1) June 1–17, 1958: Sometime in this period the Dupecks purchased the property in Holcomb, Missouri, the entire transaction being arranged and handled for them by one Grages, now deceased.

(2) June 17, 1958: The Holcomb property was insured with defendant for $25,000 by policy MOC 2585, giving $20,000 coverage on the building and $5,000 coverage on the furniture and fixtures therein. Again, all arrangements were made by Grages and the insurance purchased from one McCluney, who placed it with Union.

(3) October 2, 1958: This date appears on a general warranty deed recording or evidencing a conveyance of the Holcomb property by the Dupecks to Riggs. Grages arranged this transaction, giving Mrs. Dupeck $500 and the promise that she would receive Riggs' note for $28,000 shortly thereafter. She gave him the insurance policy.

(4) October 4 or 5, 1958: On this date Mrs. Dupeck received a note for $28,000 bearing the signature, "C. Roger Riggs," and delivered by Grages.

(5) October 8, 1958: McCluney issued $51,000 insurance coverage on the property to Riggs, to whom he supposed the Dupecks had sold the property. The policies were delivered to Grages. Only one-half the total amount was written in defendant company.

(6) October 16, 1958: Deed by Dupecks to Riggs filed.

(7) October 18, 1958: This is date of a letter written by McCluney to defendant Union Insurance, in which it is stated that the policy was being returned for cancellation "as I requested by telephone in our conversation this week."

(8) October 19, 1958: Totally destructive fire.

(9) October 20, 1958: Date of a letter appearing to be from Riggs to Union advising of the fire and making a claim, signed "C. Roger Riggs."

(10) October 30, 1958: On this day Mrs. Dupeck heard Riggs testify in a suit in Caruthersville, and deny owning property.

(11) December 12, 1958: This is the date of a check to the Dupecks for premium refund. It was rejected.

(12) January 5, 1959: Date of letter from McCluney to Dupeck. The letter actually bears the date January 5, 1958, which McCluney explained as an error, which explanation is corroborated by reference in the letter to its being a refund from June 17, 1958, to October 18, 1958.

These are the basic facts upon which this controversy must be decided. The law as applied is discussed in the remainder of this opinion.

■ The general rule states that it is not enough to have an insurable interest only at the time of taking out a policy, the "insured" need also retain such insurable interest at the date of damage upon which the claim is based. 44 C.J.S. Insurance § 175, l. c. 871; Couch on Insurance (2d) Sec. 24:17, l. c. 95. Accordingly, in Missouri it is necessary to have an insurable interest initially and at the time of loss. Becker v. Farmer's Mutual Fire Ins. Co., Mo.App., 99 S.W.2d 148, l. c. 152; Estes v. Great American Ins. Co. of N. Y., Mo.App., 112 S.W.2d 153, l. c. 156.

It is not disputed that plaintiffs owned the property on June 17, 1958, when it was insured by defendant, but evidence is persuasive that before the date of the fire such interest was divested. A general warranty deed dated and filed before the fire evidences a conveyance from the Dupecks to Riggs. Riggs, nevertheless, denies ownership of the property rather consistently, but testimony more credible than his militates against the conclusion that Dupecks rather than Riggs owned the property.

490

Exhibits A through E comprise various documents and papers bearing signatures of "C. Roger Riggs," "Charles R. Riggs," and various portions of these signatures. Riggs testified that Exhibits B and C bore his signature, and that he had written same, but he insisted that Exhibits A, D and E did not bear his signature. However, Sweat, a qualified handwriting expert, stated that the same person had signed all of these exhibits, and that there was no evidence of any tracing, simulation or forgery.

■ Notwithstanding plaintiffs' efforts to discredit Sweat's qualifications and thereby offset this testimony, the court finds it most compelling. Exhibit A is a note to the Dupecks for $28,000, and Exhibit D is a letter to defendant Union advising that "my building located in Holcomb, Missouri," has been destroyed. The preponderance of evidence indicates that Roger Riggs wrote both of these documents, and, therefore, that he was the owner of the property. This expert testimony about handwriting is supplemented by the highly credible testimony of Jordan, then Chief of Police of Holcomb, in which he stated that Grages introduced Riggs to him as the man who bought the building, and Riggs confirmed it.

The court concludes that there was a valid conveyance of the real property to Riggs and a loss of insurable interest by the Dupecks. But, the deed does not mention the furniture and fixtures in the building. Presumably the latter did not pass under the conveyance, although Mrs. Dupeck testified she thought her property was sold. In the case of furniture and fixtures there is no actual conveyance to discredit Riggs' denial of ownership, and the court concludes that the Dupecks retained an insurable interest concerning those items.

■ But assuming an insurable interest in the furniture and fixtures, the Dupecks' case must fail because there was a cancellation of the policy insuring them. Mrs. Dupeck gave Grages the policy, abstract and the deed to her of the property when the deed to Riggs' was given to Grages. She gave him no instructions about what to do with the documents, and he purportedly wanted them simply to take some dates from their pages. It is clear from all the evidence, however, that Grages had not secured the policy for this purpose.

Mrs. Dupeck's testimony in particular indicates that she had authorized Grages to handle the purchase and sale of the building, and the purchase of the insurance thereon—all with implicit faith in his integrity. Grages, because of this course of conduct and other circumstances, acquired at least apparant authority to handle Mrs. Dupeck's affairs relating to the property, and the court concludes that this apparent authority extended to presenting the policy to Mc-Cluney for the purpose of cancellation.

By all generally accepted definitions of apparent authority, Grages was cloaked with same. 2 C.J.S. Agency § 96, l. c. 1210, states:

"Whenever the principal, *by statements or conduct*, places the agent in a position where he appears with reasonable certainty to be acting for the principal, *or without interference suffers the agent to assume such a position*, and thereby justifies those dealing with the agent in believing that he is acting within his mandate, an apparent authority results which replaces that actually conferred as the basis for determining rights and liabilities." (Emphasis added.)

See also Vol. 1, Restatement of Agency, Sec. 27, l. c. 103, to the same general effect. The Missouri law on apparent authority is essentially the same as the above, as illustrated in the discussion in State ex rel. Massman v. Bland, 355 Mo. 17, 194 S.W.2d 42, l. c. 46.

It is rather clear, and quite regrettable, that Grages did not deal in good faith with Mrs. Dupeck, and in fact secured the insurance policy for a purpose other than that represented. As stated in Vol. 1,

Restatement of Agency (2D) Sec. 49, Comment g:

"However, the fact that an agent secretly intends to act for a purpose of his own or otherwise to disobey the principal does not prevent the existence of a power to bind the principal to one who relies on facts which indicate apparent authority, unless the one dealing with the agent has notice of such intent."

In short, the court holds that Grages had apparent authority to present the policy to McCluney for cancellation, that McCluney had every right to rely upon Grages' presentation of the policy and to effect cancellation, especially in view of his issuance to Grages of other insurance on the same property. Further, defendant Union in turn had a right to rely on McCluney's request for cancellation.

Plaintiffs rely heavily upon the general statement of law as expressed in Couch on Insurance, Sec. 25.16:

"The authority of an agent or a broker specially employed to procure insurance terminates with the procurement and delivery of the policy and in the absence of additional authorization, real or apparent, he has no authority to cancel the policy at a later date."

They cite several cases representative of this principle, leading examples of which are: Rolens v. Keller Construction Co., Mo.App., 24 S.W.2d 1077; Farrar v. Mayabb, Mo.App., 326 S.W.2d 337; and Spann v. Commercial Standard Ins. Co. of Dallas, Texas, 8 Cir., 82 F.2d 593. But, these cases are all factually distinguishable from the one at bar. Generally, these cases and others illustrative of the above rule involve only the insurance company (insurer), a broker and the insured; and, a situation in which the broker has acted without authority from the insured. In the instant case, Grages, a fourth party, is involved, and he has apparent authority to authorize the broker to effect cancellation. The defendant insurance company has not relied on the mere fact that the broker who took out the insurance presents it for cancellation, but upon the fact that he has been authorized to do so by the apparent agent of the insured. This factual difference not only distinguishes the instant case from those cited by plaintiffs, but indicates that the general rule relied on by plaintiffs really has no application to the present facts, and is certainly not controlling.

Plaintiffs have many other arguments urging the invalidity of the "cancellation." None are well taken. It is argued that if there was a physical cancellation, it was due to a mutual mistake of fact, the fact being that the Dupecks had not sold the property, and both Union and Mrs. Dupeck acted as if the property had been sold. Mrs. Dupeck testified that as soon as she heard Riggs testify in a divorce suit and alimony hearing she realized that she had been mistaken, and that she had not sold the property to Riggs. Her conclusion, however, is not the fact, nor is it the conclusion of the court. It is the court's conclusion that the property was sold to Riggs, and both the insurer and insured acted accordingly, there being no mistake of fact, and no possible invalidity in the insurance contract on a theory of mistake.

■■ Plaintiffs also argue that the proper amount of premium has never been refunded to Mrs. Dupeck. This is possibly so, but it is of no consequence, as such a refund is not a necessary prerequisite to cancellation. The Dupeck policy contains a clause (Lines 56–57) dealing with cancellation, under which cancellation may be by the insurer or the insured. Where, as in this case, cancellation is by the insured, there are no prerequisites to cancellation as where the insurer seeks to cancel. More accurately, there is but one prerequisite:

"The *sole* requirement to effect a cancellation by the insured is a definite and unconditional request for cancellation actually communicated to the company." Vol. III, Richards on Insurance, Sec. 532, l. c. 1765. (Emphasis added.)

Here, Mrs. Dupeck, through Grages, her agent with apparent authority to secure cancellation, has communicated the desire to cancel. Plaintiffs' Exhibit 1, a letter by McCluney to defendant, is dated one day before the fire, and relates a return of the policy for cancellation *"as I requested by telephone in our conversation this week."* It is clear that the desire of insured to have the policy cancelled had been related to the defendant before the fire, and in a manner upon which the insurer had a right to rely. This was all that was required to effect a cancellation of the policy by the insured. Notice and return of premium which might be prerequisites to cancellation initiated by the insurer are not relevant to this case. It is true that the Dupecks might have a refund upon demand, but there is no evidence of such a demand ever being made, and in fact a refund was made and refused.

Upon the above conclusions as to the facts and law applicable thereto, plaintiffs must be held to no recovery on the insurance policy on either the building or the fixtures and furniture therein.

Defendant's counterclaim in the nature of interpleader requests the court to find that it is not liable to either party, and if the court finds some liability, it requests the court to indicate to whom the defendant is liable. It has been determined that there is no liability to the plaintiffs. It follows from the court's determination that plaintiffs had conveyed the property and lost insurable interest, that Riggs acquired the property and the insurable interest therein. But it does not follow that he had validly insured the premises or in any way complied wth the policy provisions for perfecting a claim. Defendant pleads that he has not so complied, and that there are circumstances leading to the invalidity of the policies bearing Riggs' name. Riggs by his pleading effectively disclaimed any interest, and failed to meet the claims pleaded by defendant. He has, in short, "pleaded himself out of court." His testimony and pleadings consistently and emphatically deny that he is making a claim under the policies purportedly issued to him, or that he has any right to make such a claim.

Under such circumstances, the court gives judgment against plaintiffs on plaintiffs' petition, and for defendant on its counterclaim, holding that defendant is not liabe to plaintiffs on their Policy MOC 2585, either for the building or its contents; and that defendant is not liable to the interpleaded party Riggs on any of the policies issued by it and bearing Riggs' name.

The court adopts this memorandum opinion as its findings of fact and conclusions of law, and the clerk will prepare the proper judgment to be entered by the court.

The clerk in preparing the judgment with respect to the taxing of the costs will not tax the costs against the plaintiffs, but the costs to the respective parties will be borne by the respective parties.