Carolyn **FEICKERT** and Dr. Genevieve Weber, for themselves and for Theodora Weber, Plaintiffs and Appellees,

v.

Myles **FROUNFELTER**, Defendant and Appellant.

Civ. No. 900295.

Supreme Court of North Dakota.

April 18, 1991.

Tebelius Law Firm, Harvey, for plaintiffs and appellees; argued by John J. Tebelius.

Farhart, Lian, Maxson, Howard, Sorensen & Louser, Minot, for defendant and appellant; argued by Brenda M. Zent.

MESCHKE, Justice.

Myles Frounfelter appealed a judgment of $10,584.68 against him for damaging improvements in a pasture that he had rented. We hold that the judgment creditors, as heirs of their deceased mother, were entitled to sue on their mother's claim. We affirm.

After Theodore Weber died intestate in 1979, his wife, Gertrude, owned the buildings and that part of the land which she held in joint tenancy with Theodore. Their daughters, Theodora Weber, Carolyn Weber Feickert, and Genevieve Weber Meager, inherited the bulk of the land. Together, they leased the 1,360 acres for five years to Frounfelter for pasturing his cattle. When the written lease expired, the arrangement continued on a year-to-year, oral lease. The arrangement lapsed after Gertrude died in January 1986. Frounfelter did not comply with lease terms that required him to remove manure and to maintain improvements, nor did he fully pay his rent.

As personal representative of Gertrude's estate, Carolyn Feickert demanded that Frounfelter pay the rent past due, and comply with other lease obligations that were related to improvements on that part of the land which had been owned by Gertrude. A payment of $8,721.30 was made for Frounfelter by his mother in December 1986 which was accepted by the estate for the rent past due.

When Frounfelter failed to comply with the other obligations, the Weber daughters sued in small claims court for $1,949.80 for manure removal and property damages. Frounfelter removed the case to district court. The Weber daughters amended their complaint to add other damages. Frounfelter denied responsibility for the damages, raised an affirmative defense of accord and satisfaction for the payment accepted by the estate, and claimed that the daughters could not sue him because their mother's probate estate had been closed without distribution of this claim to them. After a trial without a jury, the trial court awarded $10,584.68 in damages, interest, and costs to the daughters. Frounfelter appeals.

The trial court found that the daughters had proven certain items of damages, but not others. The trial court determined that the cost of repairing buildings was $4,585.44, that the reasonable value of a water tank and supporting slab that had been damaged beyond repair was $2,000.00, that the value of a used automatic waterer

that had been destroyed was $271.00, that the cost of removing Frounfelter's share of the manure from the barns and corrals was $1,546.50, and added interest, costs, and disbursements. The trial court ruled that the daughters failed to prove the value of labor for fence maintenance and repair left undone, and failed to prove a claim for planks removed from the premises.

The trial court also found that Frounfelter's payment to the estate did not satisfy all claims, but was only a "full and complete settlement" for rent. The trial court determined "that settlement did not include any of the other claims presented in this action." *See* NDCC 9–13–04, 9–13–05, and 9–13–07. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." NDRCivP 52(a). From our review of the evidence, we conclude that the trial court's findings of fact are supported by evidence and are not clearly erroneous.

Frounfelter argues that, because the claim accrued before Gertrude's death and had not been included in the probate inventory, "preserved," or distributed to the daughters when Gertrude's estate was closed, her daughters were "barred from bringing this lawsuit ... in their individual capacities." The trial court ruled:

> As the sole heirs of their mother's estate, the plaintiffs succeeded to their mother's claims for damages to the improvements on the home quarter, even though such claims were not specifically listed as assets of the mother's estate.

We agree with the trial court.

"Upon the death of a person, his real and personal property devolves to the persons to whom it is devised ... or in the absence of testamentary disposition, to his heirs ... subject ... to administration." NDCC 30.-1–12–01 (UPC 3–101).

> The Code provides in Section 3–101 for devolution of title upon death to the successors. This devolution is expressly stated to be "subject to ... administration" and the right to possession and control of the decedent's property in ad-

ministered estates is vested in the P[ersonal] R[epresentative] by Section 3–709. Thus, "title" and "power to possess and control" are to be distinguished.

1 R. Wellman, Uniform Probate Code Practice Manual 316 (2d ed. 1977). "Since the P[ersonal] R[epresentative] has a 'power over the title' rather than 'title', no gap in title will result if the P[ersonal] R[epresentative] does not exercise his power during the administration." *Id.* at 318. The Editorial Board Comment to NDCC 30.1–18–09 (UPC 3–709) explains:

> This section deals with the personal representative's duty and right to possess assets. It proceeds from the assumption that it is desirable whenever possible to avoid disruption of possession of the decedent's assets by his devisees or heirs. But, if the personal representative decides that possession of an asset is necessary or desirable for purposes of administration, his judgment is made conclusive in any action for possession that he may need to institute against an heir or devisee.

Property passes upon death, not upon distribution.

Another part of the Uniform Probate Code confirms this analysis. "In the absence of administration, the heirs and devisees are entitled to the estate in accordance with the terms of a probated will or the laws of intestate succession.... Persons entitled to property by ... intestacy may establish title thereto by proof of the decedent's ownership, his death, and their relationship to the decedent...." NDCC 30.1–20–01 (UPC 3–901). The Editorial Board Comment to this section explains: "This section adds little to section 30.1–12–01 except to indicate how successors may establish record title in the absence of administration." As long as the personal representative of Gertrude Weber's estate did not directly exercise the power of administration over this claim for damages, her heirs were entitled to enforce the claim.

We affirm.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.