**Russell L. KIKER, Jr., Plaintiff and Appellee,**

v.

**William D. WALTERS, Sr., and Imperial Oil of North Dakota, a North Dakota corporation, Defendants and Appellants,**

Lillian Y. Walters, William D. Walters, Jr., Carrie Smith, Robert T. Smith, Lillian Walters Kaiser, Marvin L. Kaiser, Leo Kaiser, Selina Kaiser, Duane C. Petersen, Defendants.

**Duane C. PETERSEN, Plaintiff,**

v.

**Russell L. KIKER, Defendant.**

Civ. No. 910027.

Supreme Court of North Dakota.

March 27, 1992.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for plaintiff and appellee Russell L. Kiker, Jr., argued by Steven A. Johnson. Appearance by Kermit E. Bye.

Dorsey & Whitney, Minneapolis, Minn., for defendants and appellants William D. Walters, Sr., and Lillian Y. Walters; argued by Roger J. Magnuson.

Winkjer, McKennett, Stenehjem, Trotter & Reierson, Williston, for defendants and appellants Imperial Oil of North Dakota, William D. Walters, Jr., Carrie Smith, and Robert T. Smith; argued by Mark L. Stenehjem.

ERICKSTAD, Chief Justice.

William D. Walters, Sr., and Imperial Oil of North Dakota have appealed from the judgment entered in an interpleader action brought by Russell L. Kiker, Jr. We reverse in part, affirm in part, and remand.

Kiker brought an interpleader action against Walters, Imperial, and others. The complaint alleged, among other things: (1) The parties are "owners in common of certain mineral interests and oil and gas properties", the record title to which is in Kiker's name; (2) Kiker collected income from the properties and distributed it to the parties pursuant to various oral agreements; (3) Disputes arose between the parties in 1987; (4) In 1988, Kiker stopped distributing the income and began placing it in a savings account, which he "will deposit with the Court at its request to be properly invested until this matter is resolved"; (5) The defendants have made conflicting claims to the undistributed income and to the underlying properties; (6) Kiker is in doubt as to what amount of income should be distributed to each party and as to how the properties should be conveyed to the parties; and (7) Kiker brought the action to settle claims of the parties to the undistributed income and to the underlying properties "and thereafter to absolve himself from any liability for any such claims, or other matters that pertain thereto." The complaint sought as relief:

"1. That the defendants be required to interplead and settle among themselves and with the plaintiff their rights in the undistributed royalty and mineral income and their rights in the various properties;

*    *    *    *    *    *

"3. That thereafter, the plaintiff be generally discharged and released from all liability and from any claims arising out of the distribution of the royalty and mineral income and the various properties;

*    *    *    *    *    *

"5. That plaintiff be granted such other and further relief as the Court deems just and equitable."

Imperial and Walters each answered, counterclaimed for an accounting, and demanded a jury trial. The trial court struck the demands for jury trial. Imperial, supported by Walters, sought an order "excluding from the trial of this action any evidence relating to ownership of the Lillian Glovatsky minerals or lease or the responsibilities relating to such ownership." In its brief in support of that motion, Imperial asserted: (1) Kiker was asserting that Imperial and Walters owned "an interest in minerals known as the Lillian Glovatsky minerals"; (2) "Neither Imperial Oil, Mr. Walters nor any [of] the other defendants have claimed any interest in these minerals"; and (3) The Glovatsky minerals are the basis of a separate lawsuit seeking to quiet title to the Glovatsky minerals. The latter assertion is undisputed. The trial court denied the motion.

Kiker requested Walters and Imperial to admit the following:

"1. Exhibit A attached hereto accurately reflects your ownership interest in the mineral interests described therein.

"2. That as the equitable owner of the mineral interests described in Exhibit A, you should be held responsible and agree to indemnify Russell L. Kiker for any future liabilities which may arise which are directly related to ... your ownership interests, including, but not limited to, severance taxes, income taxes, and oil company adjustments."

Exhibit A described numerous assignments of oil and gas leases, overriding royalty assignments, and deeded mineral interests. Walters and Imperial admitted ownership of almost all the properties asserted to be owned by them and to their responsibility for certain expenses and tax obligations associated with their ownership of the properties. Neither Walters nor Imperial admitted any ownership interest in the Glovatsky minerals.

At trial, the parties agreed on the ownership of all the properties in issue except the Glovatsky minerals and agreed on an accounting and apportionment of the undistributed funds, except for those attributable to the Glovatsky minerals. The trial court determined the ownership of all the properties in issue, except the Glovatsky minerals, in accordance with the parties' stipulation. The court determined that Imperial was the owner of the Glovatsky minerals in issue in this case. The court apportioned the undistributed income to the parties according to their ownership of the royalty and mineral interests in issue and held that the owners of the royalty and mineral interests are responsible for liabilities arising out of their ownership of the properties and must indemnify Kiker "for any future liabilities which may arise which are directly related to their ownership interests including, but not limited to, severance taxes, income taxes, and oil company adjustments." Judgment was entered accordingly.

Imperial and Walters appealed, contending that the trial court erred in determining the ownership of the Glovatsky minerals in this interpleader action. Imperial also contends that the trial court erred in denying its request for a jury trial.

■ Interpleader, whether pursuant to statute[1] or rule,[2] is a device for resolving multiple adverse claims to a fund or liability in one proceeding. It originated as a device by which a defendant could "protect himself from double vexation upon a single liability." 7 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1701 (1986). "Rule 22 provides interpleader to dispose of the awkward situation where multiple claims are made against one party so that he might be exposed to double or multiple liability." L. Bucklin, *Civil Practice of North Dakota*, Commentary, Rule 22, N.D.R.Civ.P. (1991 Rev.). Interpleader "allows a stakeholder who is uncertain if and to whom he is liable for money or property held by him to join those who are or might assert claims against him." 7 Wright, Miller & Kane, *supra*, § 1702. It "is a proceeding whereby the rights of rival claimants to a fund or property held by a third person having no interest therein may be adjudicated." 45

1. Section 32-11-02, N.D.C.C., provides in part:
   "Whenever two or more persons make claim for the whole or any part of the same money, personal property, or effects in the possession or control of any other person ... and the right of any such claimant is adverse to the right of any other claimant, or is disputed or doubtful, and the ... person in control of any part of such property, money, or effects is unable to determine to whom the same rightfully belongs, ... the person in the possession or control of any such property, money, or effects [may deposit the money, property, or effects with the clerk of the court or a depositary designated by the district court and] thereupon shall be relieved from further liability to any person on account of such property, money, or effects."

2. Rule 22(a), N.D.R.Civ.P., which is virtually identical to Rule 22, F.R.Civ.P., from which it was derived, provides:
   "Persons having claims against the plaintiff may be joined as defendants and required to interplead if their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff disclaims liability in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain like interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20."
   Because our rule is virtually identical to the federal rule from which it was derived, we look to relevant federal caselaw construing the federal rule for guidance in construing our own rule. *Farmers Union Oil Co. v. Harp*, 462 N.W.2d 152 (N.D.1990); *First Nat'l Bank & Trust Co. v. Scherr*, 456 N.W.2d 531 (N.D.1990); *Thomas v. Thomas*, 382 N.W.2d 639 (N.D.1986).

Am.Jur.2d, *Interpleader* § 1 (1969). Interpleader may also be used to protect the individual claimants when their claims exceed the fund available. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).

"A basic jurisdictional requirement of statutory interpleader is that there be adverse claimants to a particular fund." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 741 F.2d 954, 956 (7th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). See also *Libby, McNeill, and Libby v. City Nat'l Bank*, 592 F.2d 504 (9th Cir.1978); *Gaines v. Sunray Oil Co.*, 539 F.2d 1136 (8th Cir.1976). "Where there is no adverseness among the claimants an interpleader action will not lie." 21 *Federal Procedure, L.Ed.* § 49:4 (1984). There must be exposure to multiple liability. *Id.*; 7 Wright, Miller & Kane, *supra*, § 1704. A prerequisite for interpleader is two or more claimants adverse to each other. 7 Wright, Miller & Kane, *supra*, § 1705; 45 Am.Jur.2d, *Interpleader* § 7 (1969). The requirement of adverse claimants "is not met where only one claimant asserts a claim to a fund and the other claimants disclaim any such interest." 21 *Federal Procedure, L.Ed.* § 49:4 (1984). An interpleaded party whose pleading effectively disclaims any interest in the property or fund in issue has "pleaded himself out of court." *Dupeck v. Union Ins. Co.*, 216 F.Supp. 487, 492 (E.D.Mo.1962). Where all but one of two or more claimants withdraws or disclaims any interest in the interpleaded property, there is no risk of multiple liability and interpleader is inappropriate. *Dallas Bank & Trust Co. v. Commonwealth Dev. Corp.*, 686 S.W.2d 226 (Tex.App.1984); 3A *Moore's Federal Practice*, ¶ 22.08[1].

■ As the foregoing authorities illustrate, interpleader is appropriate only if there are two or more adverse claimants asserting interests in the fund or property held by the stakeholder. One claimant is insufficient. Withdrawal or disclaimer by all but one claimant renders interpleader inappropriate. Section 32–11–02, N.D.C.C., and Rule 22(a), N.D.R.Civ.P., both specifically require the presence of multiple adverse claimants for interpleader.[3] Section 32–11–02, N.D.C.C., requires that there be "two or more persons" claiming "the whole or any part of the same money, personal property, or effects" in the possession or control of another person and that their rights be "adverse to the right of any other claimant." Rule 22(a), N.D.R.Civ.P., requires that there be more than one person with "claims against the plaintiff" and that their claims be "such that the plaintiff is or may be exposed to double or multiple liability." Here, both Imperial and Walters disclaimed any interest in the Glovatsky minerals. There were no adverse claimants to the Glovatsky minerals and Kiker was not exposed to double or multiple liability. We therefore conclude that interpleader was not authorized as to the Glovatsky minerals.

■ The fact that, as asserted by Kiker, "[t]he scope of this action involved more than a claim for interpleader," did not authorize the trial court to determine the ownership of the Glovatsky minerals, in which Imperial and Walters disclaimed any interest and as to which interpleader was improper. "[I]nterpleader ... cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort. But interpleader was never intended to perform such a function, to be an all-purpose 'bill of peace.'" *State Farm Fire & Casualty Co. v. Tashire, supra*, 386 U.S. at 535, 87 S.Ct. at 1206, 18 L.Ed.2d at 278. "[I]nterests of party convenience and judicial economy that would be served by trial of all claims in a single proceeding 'cannot compel the otherwise inappropriate joinder of claims in interpleader.'" *Libby, McNeill, and Libby v. City Nat'l Bank, supra*, 592 F.2d at 509 (quoting *Gaines v. Sunray Oil Co., supra*, 539 F.2d at 1142). An interpleader action is not the proper

---

**3.** Because § 32–11–02, N.D.C.C., and Rule 22(a), N.D.R.Civ.P., both require multiple adverse claimants, this is not a case in which "a court-promulgated procedural rule prevails in a conflict with a legislatively-enacted rule of procedure." *City of Fargo v. Dawson*, 466 N.W.2d 584, 586 n. 4 (N.D.1991).

vehicle for determining the ownership of property in which the defendants disclaim any interest. *Cf. State v. Brakke,* 474 N.W.2d 878, 882 (N.D.1991) ("A criminal theft trial is not the proper vehicle for resolving property law questions of this nature."). "When we consider all the peculiarities of this case" [*Federal Savings & Loan Ins. Corp. v. Albrecht,* 379 N.W.2d 266, 269 (N.D.1985)], we believe that, "in the interests of justice" [*State v. Robideaux,* 475 N.W.2d 915, 916 (N.D.1991)], the ownership of the Glovatsky minerals at issue in this case would be more appropriately determined in the separate pending lawsuit in which persons who are not parties in this action are seeking to quiet title to the Glovatsky minerals. We conclude that the trial court erred in determining the ownership of the Glovatsky minerals in this interpleader action.

Because of our conclusion that interpleader was not authorized as to the Glovatsky minerals, we need not address the issue of the trial court's denial of Imperial's request for a jury trial. "Questions, the answers to which are not necessary to the determination of a case, need not be considered." *Hospital Services, Inc. v. Brooks,* 229 N.W.2d 69, 70 Syllabus ¶ 3 (N.D.1975).

The judgment is reversed with respect to the Glovatsky minerals, affirmed in all other respects, and the matter is remanded for the entry of amended findings, conclusions, and judgment.

VANDE WALLE, J., and DOUGLAS B. HEEN, Surrogate Judge, concur.

DOUGLAS B. HEEN and VERNON R. PEDERSON, Surrogate Judges, sitting due to the disqualifications of LEVINE and GIERKE, JJ., members of this Court when this case was heard. Justice JOHNSON not being a member of this Court at the time this case was heard did not participate in this decision.

MESCHKE, Justice, dissenting.

I respectfully dissent. The majority opinion's conclusion, "that interpleader was not authorized as to the Glovatsky minerals", is puzzling.

Precedent from the federal court system is not apt to frame the jurisdiction of our trial courts. The power of federal trial courts is dependent upon Congressional dispensation. United States Constitution, Art. 3, § 1 ("The judicial power of the United States shall be vested ... in such inferior courts as the Congress may from time to time ordain and establish.")

Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it.

*Kline v. Burke Construction Co.,* 260 U.S. 226, 43 S.Ct. 79, 82–83, 67 L.Ed. 226 (1922). (Citations omitted.) Unlike the controlled jurisdiction of federal courts, the power of our state trial courts is fundamentally different.

A North Dakota trial court is vested with "original jurisdiction of all causes, except as otherwise provided by law...." North Dakota Constitution, Art. VI, § 8. *See* NDCC 27–05–06. *Rudnick v. City of Jamestown,* 463 N.W.2d 632, 636 (N.D. 1990): "The constitutional grant of original jurisdiction to the district court creates a court of general jurisdiction with the power *to determine all controversies which can possibly be made the subject matter of civil action.*"

The difference between the constitutional structures of the federal and state trial courts necessitates different analyses of their distinct powers. Those differences make it fundamentally wrong to "look to relevant federal case law *construing the federal rule* [22, F.R.Civ.P., on interpleader] for guidance in construing our own rule" about interpleader, as the majority opinion does. *See* note 2 in the majority opinion.

"These rules shall not be construed to ... limit the jurisdiction of the district court of North Dakota...." NDRCivP 82. "There shall be one form of action to be known as 'civil action'." NDRCivP 2. Under NDRCivP 8(a), no label is required, but only "a short and plain statement of the claim". "Relief in the alternative or of several different types may be demanded." *Id.*

Interpleader is an equitable remedy, not solely dependent on formulation by statute or by rule. 45 Am.Jur.2d *Interpleader* § 1, p. 433 (1969). *See also* 45 Am.Jur.2d *Interpleader* §§ 21, 22 p. 448–451, (1969) on state and federal statutory interpleader. That Kiker labeled his pleading "Complaint for Interpleader and Petition for Permission to Deposit Funds with Clerk of the District Court" does not warrant the majority's facile conclusion that "the trial court erred in determining the ownership of the Glovatsky minerals in this interpleader action." We are long past the formula and label pleading stage of the common law. In addition, besides seeking to deposit funds, Kiker also sought to confirm his accounts and to obtain indemnity for contingent liabilities.

Viewing the evidence in the light most favorable to the trial court's findings, as we should, we know that, in late 1976, Russel L. Kiker Jr., Marvin L. Kaiser, William D. Walters Sr., and Duane Peterson formed a group to invest in oil and gas interests in the Williston Basin. They agreed to keep the existence of the group confidential. Although profits were to be split, all purchases would be made in Kiker's name. Shares varied, depending on contributions of capital to each acquisition.

Though his role was not publicly known, Walters Sr. was the leader and coordinator. The venture was vastly successful in investing in interests that became valuable, winding up with six assignments of oil and gas leases, six overriding royalty assignments, and twenty-two mineral deeds of varying amounts of mineral acres, many producing. The parties to this lawsuit, other than the four original members of the group, all received their interests through assignments by one of the group of four. Thus, Imperial Oil, Lillian Walters, William Walters Jr., Lillian Kaiser, Carrie Smith, and Robert Smith all received their interests from Walters Sr.

In January 1977, pursuant to instructions from Walters Sr., Kiker, on behalf of himself, Kaiser, and Walters Sr., (but not Peterson), purchased 20 mineral acres in Dunn County from Pete and Lillian Glovatsky, that later became part of the prolific Little Knife field. On the same date, per instructions from Walters Sr., Kiker leased the minerals to Target Energies, Inc., a corporation solely owned by Kaiser. Until recently, record title to these Glovatsky minerals remained in Kiker's name, and record title to the lease remained in Target's name.

After oil development began in 1979, Kiker distributed the oil proceeds from these Glovatsky minerals to himself, 37.5 percent; to Imperial (Walters Sr.'s assignee), 37.5 percent; and to Kaiser, 25 percent. Walters Sr. was the major stockholder and president of Imperial through November of 1988. Similarly, Kiker, Kaiser, and Walters Sr., through Imperial, each received one-third of the proceeds from the Target lease of these Glovatsky minerals. Quarterly, Kaiser prepared an accounting of the income from the Glovatsky minerals and lease, and delivered it, along with disbursement checks, to himself, Kiker, and Walters Sr. From 1979 through 1987, Walters Sr. and Imperial received and accepted over $600,000 solely from the Glovatsky minerals and lease.

Shortly after the Target lease of the Glovatsky minerals was recorded, a dispute arose with the William Herbert Hunt Trust Estate, which claimed priority of its unrecorded oil and gas lease from Glovatsky, dated July 22, 1972. According to Kiker and Kaiser, Walters Sr. had spent many days coaching and instructing Kiker and Kaiser about how to testify at their depositions and in the 1977 trial. As a result of the trial and the subsequent appeal, Target was held to be a bona fide purchaser for value. *Hunt Trust Estate v. Kiker*, 269 N.W.2d 377 (ND 1978). Target's lease was

deemed to have priority over the Hunt lease, and Kiker's group greatly benefitted from the oil development that followed.

In 1987, Kiker attempted to get Walters Sr. to join in a disclosure to Hunt, but Walters Sr. did not respond to these attempts. Then, Kiker and Kaiser approached Hunt. They admitted to Hunt that they had given false testimony about their business relationship at the 1977 trial, and they divulged the involvement of Walters Sr. and Imperial. In late 1988, Kiker and Kaiser settled with Hunt by each paying Hunt $305,500, and by transferring to Hunt their entire interest in the Target lease. In addition, though Hunt had no claim to the minerals, Kiker and Kaiser transferred to Hunt their combined 62.5 percent interest in the Glovatsky minerals. In exchange, Hunt released and discharged Kiker and Kaiser from any further liability for the Glovatsky debacle.

Before commencing this action, Kiker unsuccessfully sought to dissolve the group and to transfer record ownership of the properties, all still in Kiker's name, to the rightful owners. As part of that effort, in 1988, Kiker ceased distributing the income from the properties, and he placed the income in a separate interest-bearing account for the benefit of the owners. Because Kiker was unable to get everyone to agree, particularly Walters Sr. and his assignees, to indemnify him for liabilities for severance taxes, income taxes, and oil company adjustments, Kiker's settlement attempts were unsuccessful. It was not until shortly before this action began that Walters Sr. and Imperial disclaimed any interest in the Glovatsky minerals and lease.

In February 1989, Kiker sued to determine the rights and responsibilities of each member of the group and of their respective assignees in the properties and the withheld income. Appropriately, Kiker also sought indemnification for various existing and contingent liabilities connected to the properties.

At trial of this action, the parties stipulated to the ownership of all of the properties, except for the Glovatsky minerals in Kiker's name. The parties also agreed to the accounting and apportionment of all withheld funds except for those attributable to the Glovatsky minerals.

In mid–1989, months after this action was begun by Kiker, Hunt sued Kiker, Kaiser, Walters Sr., and Imperial in Dunn County, seeking damages from Walters Sr. and Imperial for fraud, conspiracy to defraud, unjust enrichment, and slander of title, based on the income that Hunt would have received if its lease had been determined to have priority. Chevron, which in 1979 had obtained an assignment from Hunt of its lease of the Glovatsky minerals, later joined in that litigation. Cryptically, the majority opinion concludes that "the ownership of the Glovatsky minerals at issue in this case would be more appropriately determined in" this separate lawsuit by Hunt and Chevron.

Walters Sr. does not claim that any of the trial court's findings of fact are clearly erroneous. He only argues that the trial court's "hearing and deciding the issue of ownership of the ... Glovatsky minerals was both prejudicial and purposeless here, because that same issue, in the form of a quiet title count, was present in the Dunn County action brought by Hunt...." Similarly, Imperial does not claim that any of the trial court's findings are clearly erroneous, but rather argues that the "trial court abused its discretion by allowing Kiker, with his unclean hands, to prosecute this action as to the Glovatsky minerals". There is no overriding principle of law that directs a joint venture, even an unscrupulous one, to dissolve and to litigate their individual responsibility with outsiders, rather than among themselves. *See* 46 Am.Jur.2d *Joint Ventures,* § 48 (1969) ("[I]n a settlement and accounting between joint venturers, each is chargeable with the consequences of his own derelictions or misconduct.")

The separate lawsuit by Hunt and Chevron was begun after this lawsuit was started. Generally, "the exercise of concurrent jurisdiction is controlled by the principle of priority." 20 Am.Jur.2d *Courts* § 128 (1965). Ordinarily, the first of two courts with concurrent jurisdiction that acquires

jurisdiction of a case "may dispose of the whole controversy." 21 C.J.S. *Courts* § 188 (1990). Walters Sr. and Imperial have not supplied any reason why we should direct the trial court to depart from this priority principle. We should affirm the trial court's determination of the disputes among the members and assignees of the group venture, regardless of the pending claims by outsiders against some, but less than all, of the group.

Because the majority reverses and directs that ownership of the Glovatsky minerals is to be determined in the Hunt lawsuit, the majority does not address the trial court's denial of Imperial's request for a jury trial. This assents to the relief sought by Imperial. Because I believe that it is wrong to let Walters Sr. and Imperial choose their own forum for settling this account with their joint venturers, I would affirm the trial court's denial of a jury trial as well.

The trial court explained the reasons why it denied a jury trial:

> Since this action has the attributes of a dissolution, quiet title action, action for specific performance, and equitable accounting, which are all equitable actions, there is no right to a trial by jury. Except for the cross-claims between Kaiser and Peterson, the remaining counterclaims and crossclaims also seek specific performance, accounting, and incidental and dependent on the outcome of the accounting, money damages. Money damages merely incidental or dependent upon the equitable action do not give a right to a trial by jury. *Lithun v. Grand Forks Public School, Etc.*, 307 N.W.2d 545 (N.D.1981).

Walters Sr. and Imperial "presented no evidence supporting their counterclaims [for damages] against ... Kiker", the trial court found. In my opinion, the trial court did not abuse its discretion in denying Imperial a jury trial.

Because I would affirm the trial court in all respects, I respectfully dissent.

VERNON R. PEDERSON, Surrogate Judge, concurs.